Mark ROBERTSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 71224.

Court of Criminal Appeals of Texas.

Dec. 8, 1993.

Rehearing Overruled March 9, 1994.

---

Lawrence B. Mitchell, Dallas, for appellant.

John Vance, Dist. Atty., and A. Wetherholt, J. Warder, H. Wilson and L. Breading, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for State.

## OPINION

MALONEY, Judge.

Appellant was found guilty of capital murder committed in the course of a robbery. TEX.PENAL CODE ANN. § 19.03(a)(2) (West 1990). After the jury returned affirmative answers to the special issues, the trial court sentenced appellant to death. TEX.CODE CRIM.PROC.ANN. art. 37.071(b) (West 1990). Appeal to this Court is automatic. TEX.CODE

CRIM.PROC.ANN. art. 37.071(h) (West 1990). We will affirm.

## I.

Appellant challenges the sufficiency of the evidence in his first point of error. Specifically, he complains the evidence is insufficient to prove the underlying felony component of the capital murder. A review of the facts is necessary.

Several days after the murder at issue in this case, an officer of the Las Vegas, Nevada police department, running a routine license check on a blue Cadillac with Texas plates, was informed that the car was stolen and that the subjects should be considered armed and dangerous. Appellant and another man were observed approaching the car, which was now parked and unoccupied. The two were apprehended as soon as appellant placed his key in the ignition. Appellant was read his *Miranda*[1] rights, after which he began a series of confessions.

Appellant first informed the two officers who arrested him that they were lucky to have approached the Cadillac so quickly, because he had not had time to retrieve a gun which was under the seat. Appellant then inquired as to where the television cameras were, believing that by now he would be on the television program "America's Most Wanted."

When Las Vegas Police Department Sergeant Mark Medina arrived at the scene, appellant bragged to him that he was famous. Unaware of what appellant was speaking of, Sergeant Medina inquired further. Appellant responded, "I figured I'd be on America's Most Wanted TV show by now." Sergeant Medina asked appellant if he had been read his *Miranda* rights, and if he still wanted to talk. Appellant said yes, and then stated that he was on probation in Dallas for robbery and that he had shot a boy and his grandmother. Appellant informed Sergeant Medina that he had gone to the house of a friend, Sean Hill, who lived with his grandmother, Edna Brau, in Dallas. Hill had previously sold appellant drugs so the two were acquainted. Appellant and Hill

ingested some crystal methamphetamine, commonly referred to as "crank," and went outside to fish. While Hill was fishing, appellant shot him in the back of the head with a .38 caliber pistol. He told Sergeant Medina that he went back inside to steal Hill's drugs. Once inside he saw Ms. Brau in the den watching television and shot her in the head.

Appellant similarly confessed orally to two other officers. In each of those confessions, appellant indicated he shot Hill, went back inside the house, shot Ms. Brau, and began searching the house for valuables, drugs, and the title to Ms. Brau's car, the blue Cadillac.

Appellant also signed a written confession stating:

> On Saturday night around 9 PM I decided to walk over to Sean's house on Hathaway where he lived with his grandmother. When I got there, Sean was in his room watching T.V. We sat around watched TV and did some pot and crank. We then decided to go fishing out in the backyard. We were using one stick with a string and a hook. We would trade off, I think we caught some seven catfishes. While we were fishing, I think we were kneeling. I pulled my gun out of my pants and shot Sean once in the head. After I shot him, Sean fell in the water. I then ran in the house through Sean's bedroom and into the bathroom where I splashed some water over my face. I then walked into the den where Mrs. Hill, Sean's grandmother, was watching TV and I shot her once. I unplugged the TV because it was playing and so was the radio in the bedroom.
>
> I looked through her bedroom drawers and found her purse on the make-up counter. I saw some costume jewelry but left it alone. I did take a wristwatch which I later threw away in a garbage can but I don't remember where. I then ran into Sean's room and took his crank which was left on the bed. I then drove off in Mrs. Hill's car. I went on home and then went to Showtime on Greenville and Lover's where I wiped it all down and left it there. I then walked back home. Next day while

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

listening to the evening news I heard about their bodies being found. I couldn't sleep for the next couple of days so I figured that I would just leave. I walked back to the parking lot at Showtime where I got in the car and decided to drive to Las Vegas where my parents used to bring me. I had left the car in the parking lot. I threw the purse away in a dumpster at the Village Apts. I think that I left on Tuesday sometime around 4 PM. I drove all the way to Albuquerque, N. Mexico where I spent the night and the following day I drove to Vegas. I was staying at the SuLinda Motel in Vegas. I met Nikki two or three days later at the Circus–Circus. I used my roommate's money to get to Vegas. He had some $700.00 in cash in his room. I think that Mrs. Hill's purse had some $37.00 in cash which I took. These past few days I didn't know what to do and when I got arrested I felt relieved for the most part because I didn't have to run anymore.

■ Appellant challenges the sufficiency of the evidence to prove he formed the intent to rob Ms. Brau during or prior to her murder.[2] This Court has defined "in the course of committing" an offense listed in section 19.03(a)(2), *supra,* as conduct occurring in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of the offense. *Garrett v. State,* 851 S.W.2d 853, 856 (Tex.Crim.App.1993); *Riles v. State,* 595 S.W.2d 858, 862 (Tex.Crim.App.1980). In order for the murder to qualify as capital murder under section 19.03(a)(2) of the Texas Penal Code, the intent to rob must be formed prior to or concurrent with the murder. *Garrett, supra; see White v. State,* 779 S.W.2d 809, 814–15 (Tex.Crim.App.1989), *cert. denied,* 495 U.S. 962, 110 S.Ct. 2575, 109 L.Ed.2d 757 (1990).

■ In reviewing the sufficiency of the evidence in a direct or circumstantial evidence case, a reviewing court determines whether, based on the evidence viewed in the light most favorable to the verdict, a rational jury could have found all the essential elements beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Geesa v. State,* 820 S.W.2d 154, 155–61 (Tex.Crim.App.1991). "If the State introduces evidence from which the jury could rationally conclude that appellant formed the intent to obtain or maintain control of the victim's property either before or during the commission of the murder, then the State 'has proven that a murder occurred in the course of robbery, although the element of appropriation occurred after the murder.'" *Zimmerman v. State,* 860 S.W.2d 89, 93 (Tex.Crim.App.1993) (*quoting Nelson v. State,* 848 S.W.2d 126, 132 (Tex. Crim.App.1992)). When viewed in the light most favorable to the verdict, the evidence is sufficient to prove appellant murdered Edna Brau in the course of robbing or attempting to rob her.

Appellant places great importance on the fact that in his oral confession to Sergeant Medina he stated that the reason he went back into the house after shooting Hill was to steal Hill's drugs. Initially we note that in all the other confessions no such intent was stated. Additionally, in one of appellant's other confessions, he stated that after shooting Ms. Brau he began searching the house for jewelry, money, drugs, and the title to the automobile.

■ Intent may be inferred from the actions or conduct of appellant. *McGee v. State,* 774 S.W.2d 229, 234 (Tex.Crim.App. 1989), *cert. denied,* 494 U.S. 1060, 110 S.Ct. 1535, 108 L.Ed.2d 774 (1990). The evidence showed that Hill's living area was separate from Ms. Brau's quarters and could be entered separately from the outside. When appellant arrived he entered the house through Hill's entrance. Had appellant's in-

2. Specifically, the indictment alleged that appellant:

on or about the 19th day of August, [1989 in Dallas County,] did then and there ... knowingly and intentionally cause the death of Edna Brau, an individual, hereinafter called deceased, by shooting said Edna Brau with a firearm and the defendant intentionally did cause the death of the deceased while the said defendant was *in the course of committing or attempting to commit the offense of robbery of the said deceased* ...

(emphasis added).

tent only been to steal Hill's drugs, he could have accomplished that objective without ever entering Ms. Brau's portion of the house. A rational inference could be made that appellant not only intended to steal the drugs, but entered Ms. Brau's portion of the house with the intention of finding the keys and title to the Cadillac as well as other valuable items in the house. This evidence, in addition to the other confessions of appellant, could lead a rational juror to conclude appellant intended to rob Ms. Brau before or when he shot her. *See Upton v. State,* 853 S.W.2d 548 (Tex.Crim.App.1993); *Nelson v. State,* 848 S.W.2d 126 (Tex.Crim.App.1992); *compare Ibanez v. State,* 749 S.W.2d 804 (Tex.Crim.App.1986) (opinion on original submission) (appellant's confession denied "that the murder occurred in order to facilitate the theft."). Appellant's first point of error is overruled.

■ In his second point of error, appellant claims that he was entitled to an instruction on the lesser included offense of murder. Like the first point of error, appellant contends the evidence of intent to rob the decedent is weak and as such appellant may only be guilty of murder.

■ A charge on a lesser included offense must be submitted if the offense requested to be charged is a lesser included offense, and if there is some evidence in the record that if the defendant is guilty, he is guilty of only the lesser included offense. *Royster v. State,* 622 S.W.2d 442 (Tex.Crim.App.1981) (opinion on reh'g) (plurality opinion), *adopted, Aguilar v. State,* 682 S.W.2d 556, 558 (Tex.Crim. App.1985); *Rousseau v. State,* 855 S.W.2d 666, 672 (Tex.Crim.App.1993). As we clarified the test in *Rousseau,*

> first the lesser included offense must be included within the proof necessary to establish the offense charged, and, second, some evidence must exist in the record

that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser offense.

855 S.W.2d at 673. The first prong of the test is easily met, that is, intentional murder is a lesser included offense of capital murder. *Ex parte McClelland,* 588 S.W.2d 957, 959 (Tex.Crim.App.1979). The more difficult question is whether there is some evidence in the record, which if true, would permit a jury rationally to find that the defendant is guilty only of that lesser included offense.

■ Under the second prong of the test, appellant was entitled to a charge on the lesser included offense if there was some evidence in the record that would permit a jury rationally to find that appellant had not formulated an intent to rob Ms. Brau before, or as he killed her.[3] *See White,* 779 S.W.2d at 815 (question in case of capital murder committed in course of robbery is whether jury would be justified in finding that defendant intended to take victim's property "before, or as" he murdered her); *see also Zimmerman,* 860 S.W.2d at 93 (state proves murder in course of robbery where defendant formed intent to obtain or maintain control of the victim's property "either before or during" commission of murder). "Regardless of the strength or weakness of the evidence, if any evidence raises the issue that the defendant was guilty only of the lesser offense, then the charge must be given." *Saunders v. State,* 840 S.W.2d 390, 391 (Tex. Crim.App.1992). If there is some evidence which negates the aggravating element of the greater offense or if the evidence of such aggravating element is so weak that a rational jury might interpret it in such a way as to give it no probative value, then the defendant is entitled to a charge on the lesser included offense.[4]

Appellant points to his statement to Sergeant Medina that he returned to the house

---

**3.** We note again that under the indictment the State was required to prove that appellant intended to cause the death of Ms. Brau, in the course of committing or attempting to commit robbery of Ms. Brau. Fn. 2, *infra.*

**4.** As we have said, there are two ways in which the evidence may show that a defendant is guilty only of the lesser offense:

> First, there may be evidence which refutes or negates other evidence establishing the greater offense.... Second, a defendant may be shown to be guilty only of the lesser offense if the evidence is subject to different interpretations.

*Saunders,* 840 S.W.2d at 391–92.

after killing Hill with the intention of stealing Hill's drugs, as evidence that he was guilty only of murder.[5] This statement does not amount to evidence that before or as appellant shot Ms. Brau he had no intent to steal anything belonging to Ms. Brau or that he could not have formulated such intent between the time he decided to return to the house and the time he shot her. Appellant's confessions indicated that after shooting Hill, appellant went into Hill's portion of the house first, and then entered Ms. Brau's portion of the house. He shot Ms. Brau and searched her portion of the house, taking some valuables, and looking for the title to the Cadillac. Appellant then returned to Hill's portion of the house, took the drugs, and left the scene in the Cadillac. If appellant's only desire was to steal Hill's drugs he could have fled the property once this was accomplished, without entering the other portion of the house. Appellant also places considerable importance on the fact that he did not look for or steal any of Ms. Brau's property until after he shot Ms. Brau. However, Ms. Brau was in the first room appellant would have entered once he decided to burglarize her portion of the house.

Appellant's statement that he intended to steal Hill's drugs does not negate the aggravating element in capital murder, that is, that appellant formulated an intent to steal items belonging to Ms. Brau sometime before or as he killed her. Neither can the evidence be interpreted in such a way as to support a finding that appellant did not formulate an intent to steal from Ms. Brau before or as he shot her. In order for a jury to rationally find appellant guilty of intentional murder but not capital murder, they would have to disregard the evidence of such intent—that appellant went back into the house for the purpose of stealing something, that appellant would not have entered Ms. Brau's portion of the house had he not intended to steal some-

thing from that portion of the house, and that appellant stole a number of Ms. Brau's valuables after killing her, including the car in which he fled the scene. A rational jury would not disregard such evidence as probative of appellant's intent to steal from Ms. Brau before or as he murdered her. Appellant's second point of error is overruled.

■ In his third point of error, appellant complains the trial court erred in overruling his objection to an argument by the State during punishment. Addressing appellant's theory that appellant only attempted to steal Hill's drugs, and that he did not intend to rob Ms. Brau, the State argued that under the definitions of owner and possession contained in the charge, Ms. Brau could be considered the "owner" who had a greater right to possession of the drugs in Hill's portion of the house.[6]

■ Appellant argues that there was no "nexus" between Ms. Brau and the drugs. Proof of ownership may be made by circumstantial evidence, just as any other issue in a criminal case. *Jordan v. State*, 707 S.W.2d 641, 644 (Tex.Crim.App.1986). Appellant contends the evidence failed to reflect Ms. Brau had title to the illegal contraband, or that she had any right to possession. However, this was to be determined when the jury considered the charge and the definitions of "owner" and "possession." The relationship between the deceased and her grandson as well as the ownership of the house at least raises a factual issue for determination by the jury of whether the deceased had a "greater right to possession of the property" than appellant. *See* TEX.PENAL CODE ANN. § 1.07(a)(24). We agree with the State that this was a factual question for the jury and does not rise to the level of a misstatement of the law. Accordingly, appellant's third point of error is overruled.

---

5. The autopsy indicated, contrary to appellant's assertion in his confession, that Hill was not under the influence of any drugs at the time of his death.

6. The definition of "owner" and "possession" contained in the charge were identical to the definitions in the penal code:

(24) "Owner" means a person who has title to the property, possession of the property, whether lawful or not, or a greater right to possession of the property than the actor.

\* \* \* \* \* \*

(28) "Possession" means actual care, custody, control, or management.
Tex.Penal Code Ann. § 1.07 (West 1990).

## II.

In his fourth point of error, appellant complains the trial court erred in not allowing the admission of a psychological evaluation report during punishment under Rule 611 of the Texas Rules of Criminal Evidence as well as cross-examination of the witness on the document. Rule 611 provides for the admission of writings used to refresh a witness's memory. The Rule states,

> If a witness uses a writing to refresh his memory for the purposes of testifying or before testifying, an adverse party is entitled to have the writing produced at the hearing, to inspect it, to cross-examine the witness thereon, and to introduce in evidence those portions which relate to the testimony of the witness. If it is claimed that the writing contains matters not related to the subject matter of the testimony the court shall examine the writing in camera, excise any portion not so related, and order delivery of the remainder to the party entitled thereto.

Tex.R.Crim.Evid. 611.

During the punishment phase of the trial, the State called appellant's juvenile probation officer as a witness. The witness stated that in preparation for testifying he had read the materials in his file which included a psychological evaluation of appellant, prepared by Plano Child Guidance. The witness also indicated that, based upon the report, further counseling was added as a condition of probation:

> PROSECUTOR: Did you refer [appellant] and his parents to the Plano Child Guidance for additional counseling if they desired to do that?
>
> WITNESS: Yes, I believe it was prior to the hearing, we had a psychological evaluation done on [appellant] and that's why that was added as a term [of probation],

that they were to continue with Child Guidance.[7]

During cross-examination appellant attempted to introduce the psychological evaluation report in its entirety under Rule 611.[8]

While 611 is not a *carte blanche* rule allowing admission into evidence of all the documents in an opposing witness's files, the rule does allow for the discovery of the documents used to refresh a witness's memory prior to or during testimony, and admission of portions of the documents which relate to the witness's testimony.

When the writing is used by the witness to refresh his memory, the opposing party upon request can inspect the document and use it for purposes of cross-examination. *Salazar v. State,* 795 S.W.2d 187, 193 (Tex. Crim.App.1990); *White v. State, 478* S.W.2d 506, 511–12 (Tex.Crim.App.1972) (failure to compel inspection is error). Further, the opposing party can introduce the document, not for the truth of the matter asserted, but for use by the jury in comparing the document to the witness's testimony. 1 *McCormick on Evidence* § 9 (John W. Strong et al. eds., 4th ed. 1992). However, if it is claimed by the party calling the witness that the writing contains matters not related to the subject matter of the testimony, the trial court must review the writing to determine whether it contains unrelated portions. If so, those portions are redacted from the document and preserved for appellate review. *See United States v. Howton,* 688 F.2d 272, 277 (5th Cir.1982) (trial court denied review of document used to refresh memory under federal rule 612 because it contained sensitive material and after an *in camera* review determined it was not "germane to the matter covered with the witness on direct") *accord Young v. State,* 830 S.W.2d 122, 123 (Tex.Crim.App.1992) (plurality opinion) (where state does not claim records con-

---

7. There was another reference to appellant's treatment for drug abuse, but the record is unclear whether this treatment had anything to do with Plano Child Guidance.

8. During direct examination of the probation officer, the trial court denied appellant's motion to admit the report into evidence, as inadmissible hearsay. Appellant provided no exceptions at this time to the hearsay rule. During cross-examination, the witness testified that he had commissioned an evaluation of appellant by Plano Child Guidance, and as a result of that report the judge had made his probation contingent upon appellant attending the clinic as directed. Appellant again sought introduction of the report based this time on Rule 611, as a writing used to refresh the witness's memory.

tained "matters not related to the subject matter of the testimony," defendant is entitled to all records used to refresh a witness's testimony); 1 *McCormick on Evidence* § 9 (John W. Strong et al. eds., 4th ed. 1992).

▮▮▮▮▮ In this instance the report was used by the witness to refresh his memory prior to testifying. The witness testified on direct examination that based upon his recommendation, further counseling was added as a condition of appellant's probation. The witness also testified that he had relied upon the report in making that recommendation. The report "related to" the testimony of the witness.[9] Because neither party claimed the report contained matters unrelated to the witness's testimony, it was error not to admit into evidence under Rule 611 the entire document. Therefore, we must address whether the error made no contribution to the punishment. TEX.R.APP.P. 81(b)(2).

In assessing the harmfulness of the trial court's error, we analyze the evidentiary value of the document under Rule 611.[10] A document admitted under Rule 611 is not admitted for the truth of the matter asserted, but rather it is admitted for purposes of testing the credibility of the testifying witness. *See* STEVEN GOODE ET AL., TEXAS RULES OF EVIDENCE CIVIL AND CRIMINAL § 612.3 at 459 (West 1988) (writing offered into evidence under Rule 611 is admissible for impeachment purposes and not as substantive

evidence). In this instance nothing in the report contradicted the testimony of the witness. The report recommends that appellant receive further psychotherapy and thereby supports the witness's testimony that based thereon he recommended that the court make continued treatment a term of probation.[11] Accordingly, because the report had no impeachment value, its exclusion did not contribute to appellant's punishment and was harmless. Appellant's fourth point of error is overruled.

### III.

▮▮▮ In his fifth point of error, appellant claims the trial court failed to provide a form for the jury to sign if they were unable to answer the special issues. Appellant wanted the jury to be able to answer the special issues "yes," "no," or "we can't decide."[12]

We have addressed similar contentions concerning a trial court's failure to instruct a jury of the effect of their inability to reach a verdict. In *Nobles v. State,* this Court stated:

It is the role of a juror to simply answer the special issues either "yes" or "no," and nothing else. Conversely, it is not the role of the individual juror to skirt this responsibility by failing to return a vote. The issues are framed in a manner which permits them to be answered either affirma-

---

9. Rule 611 is broader than prior common law rules governing admissibility of documents relied upon by witnesses. Previously, the introduction of such documents were governed by the "Gaskin Rule" and the "use before the jury rule." The "Gaskin Rule" only applied where the writings were prepared by the witness. *White v. State,* 478 S.W.2d at 511, n. 8; *Artell v. State,* 372 S.W.2d 944 (Tex.Crim.App.1963). Additionally, the scope of discovery and introduction of documents under the "Gaskin Rule" was limited to cross-examination and impeachment. *White,* 478 S.W.2d at 512, n. 10. The "use before the jury rule" allowed a defendant "to inspect, upon his timely request, any document, instrument or statement which has been used by the State before the jury in such a way that its contents become an issue." *White,* 478 S.W.2d at 511; *Sewell v. State,* 367 S.W.2d 349, 351 (Tex.Crim. App.1963). Rule 611 does not contain any such limitation, but simply provides that portions of the document used to refresh a witness's memory which "relate to" the testimony of the witness are admissible.

10. We merely address the admissibility of the document under Rule 611. Our holding here today should not reflect any decision of the propriety of the trial court's ruling that the document was inadmissible hearsay.

11. Appellant made no other attempt to question the witness concerning the document other than predicate questions developing the admissibility of the document under Rule 611. If appellant desired the admissibility of the document for other purposes than for impeachment of the witness's statements during direct examination, he has failed to preserve error. TEX.R.APP.P. 52(b).

12. Appellant objected specifically "to the failure of the Court on the verdict form to provide a space for the foremen (sic) to sign if the jury is unable to answer a special issue. This is necessary because if the jury cannot unanimously answer Yes or if 10 cannot answer No the Court shall sentence the defendant to life."

tively or negatively, and it is the purpose of the deliberative process to resolve juror vacillation.

843 S.W.2d 503, 510 (Tex.Crim.App.1992); *see also Hathorn v. State*, 848 S.W.2d 101, 124–26 (Tex.Crim.App.1992); *Draughon v. State*, 831 S.W.2d 331, 337–38 (Tex.Crim.App. 1992). It is an integral part of the trial process that we put the jury to a difficult but necessary question. Contrary to appellant's contention, the trial court correctly denied his motion presenting the jury with an option which makes that decision easier. *See Nobles, supra; Hathorn, supra.* Appellant's fifth point of error is overruled.

## IV.

During the punishment phase of the trial, the trial judge instructed the jury concerning mitigating evidence and its effect on the verdict. Appellant's sixth through fourteenth points of error concern mitigating evidence and the Supreme Court's decision in *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). In this cause the jury was charged at punishment,

> You are instructed that you shall consider any evidence, which, in your opinion, is mitigating. Mitigating evidence is evidence that reduces the defendant's personal or moral culpability, or blameworthiness, and may include, but is not limited to an aspect of the defendant's character, record, background, or circumstances of the offense for which you have found him guilty. Our law does not specify what may or may not be considered as mitigating evidence. Neither does our law provide a formula for determining how much weight, if any, a mitigating circumstance deserves. You may hear evidence, which in your judgment, has no relationship to any of the special issues, but if you find such evidence is mitigating under these instructions, you shall consider the following instructions of the court. You and each of you, are the sole judges of what evidence, if any, is mitigating and how much weight, if any, the mitigating circumstances, if any, including those which have no relationship to any of the special issues, deserves.

> You are instructed that some mitigating evidence, if any, may not be relevant to resolving the special issues but may be relevant in determining whether or not the defendant should be put to death.

> In answering the Special Issues submitted to you herein, if you believe that the State has proved beyond a reasonable doubt that the answers to the Special Issues are "Yes," and you also believe from the mitigating evidence, if any, that the defendant should not be sentenced to death, then you shall answer at least one of the Special Issues "No" in order to give effect to your belief that the death penalty should not be imposed due to the mitigating evidence presented to you. In this regard, you are further instructed that the State of Texas must prove beyond a reasonable doubt that the death sentence should be imposed despite the mitigating evidence, if any, admitted before you.

We will initially address appellant's twelfth and thirteenth points of error. In his twelfth point of error, appellant complains the trial court erred in failing to submit a special issue concerning mitigation rather than the "nullification" charge actually given. *See* TEX.CODE CRIM.PROC.ANN. art. 37.071 § 2(e) (effective Sept. 1, 1991). He argues the "nullification" charge did not "fully and fairly present the issue to the jury for resolution." In his thirteenth point of error, appellant complains the judgment of the trial court is unconstitutional because the jury was not given an adequate vehicle to express their personal, moral reasoned response to appellant's culpability as required by *Penry, supra*, and the Eight Amendment of the United States Constitution.

We disagree. In *Fuller v. State*, this Court held that a nullification charge "was adequate to avoid the constitutional infirmity condemned by *Penry* because we do not perceive 'a reasonable likelihood that the jury . . . applied the challenged instruction in a way that prevent[ed] the consideration of constitutionally relevant evidence." 829 S.W.2d 191, 209 (Tex.Crim.App.1992) (*quoting Boyde v. California*, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990)). Appellant is not entitled to a separate "special issue." The Supreme Court has not required

that a particular vehicle be employed to allow for the jury's consideration of mitigating evidence, only that the jury be provided with a vehicle. A "nullification" charge is sufficient to meet the commands of *Penry. Fuller, supra.* Appellant's twelfth and thirteenth points of error are overruled.

In his fourteenth point of error, appellant asks this Court to reassess the facial constitutionality of article 37.071 based on the Eighth and Fourteenth Amendments. He specifically asks us to revisit *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976) which upheld the facial constitutionality of our statute and overrule our precedents based on this case. We decline to do so. Appellant's fourteenth point of error is overruled.

■ In his sixth and seventh points of error, appellant complains the trial court erred by not providing counsel with the "nullification" instruction prior to the beginning of voir dire. Appellant contends that because the law on mitigation was in flux and his attorney was unable to know what type of mitigation charge would be given, he was denied effective assistance of counsel.

We note at the outset that appellant did not submit a requested charge at the time of voir dire. Moreover, a trial judge is not required to prepare a preliminary charge prior to voir dire. Because the evidence has not been heard at this point, it is not an abuse of discretion for a trial court to deny a request prior to voir dire, to decide upon the type of charge to be given at punishment. *See* TEX.CODE CRIM.PROC.ANN. art. 36.14 ("the judge shall, before argument begins, deliver to the jury, ... a written charge distinctly setting forth the law applicable to the case ...") (West 1990). Here, the trial court informed appellant he was not willing to determine the type or wording of the charge until the conclusion of the evidence, but because he was aware of appellant's concerns, he would allow appellant "a great deal of freedom on voir dire to discuss mitigation." Appellant does not allege that he was prevented from questioning the venire during voir dire concerning mitigation. Accordingly, we cannot conclude the trial court erred in refusing, prior to voir dire, to decide upon the charge to be given at punishment.

As it was not error for the trial court to refuse to give the instruction prior to voir dire, it was not ineffective assistance for trial counsel to proceed to voir dire without knowing the precise instruction that would be given by the court. To show counsel was ineffective, appellant must demonstrate that his trial counsel's performance was deficient because it fell below an objective standard of reasonableness, and that there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *Hernandez v. State,* 726 S.W.2d 53 (Tex.Crim.App.1986). Appellant has not demonstrated that trial counsel's performance was deficient during the voir dire process. Neither the lack of knowledge of the jury charge as it would finally appear nor knowledge of how the law would develop in a certain area constitute a deficiency in a trial counsel's performance. Appellant's trial counsel was knowledgeable concerning *Penry v. Lynaugh, supra,* and counsel requested such instruction during punishment. Additionally, there is no showing that counsel was limited in his questioning of the venire concerning mitigation.

Appellant also contends that counsel could not strike veniremembers for cause in the event they could not follow the law on mitigation. While it may be useful for trial counsel to understand a potential juror's views concerning certain mitigating evidence, nothing in the law *requires* a juror to consider any particular evidence as mitigating. *See* point of error eight, *infra.* Appellant has made no showing that trial counsel's performance was deficient under the first prong of *Strickland, supra.* Appellant's sixth and seventh points of error are overruled.

In his eighth and ninth points of error, appellant complains the trial court erred in failing to instruct that certain evidence is mitigating as a matter of law and for failing to instruct the jury on the weight to be given mitigating factors, respectively.

■ The constitution requires that a juror must be provided with a vehicle to give

his or her reasoned moral response to relevant mitigating evidence. *Johnson v. Texas,* — U.S. —, 113 S.Ct. 2658, 125 L.Ed.2d 290 (1993); *Penry,* 492 U.S. at 328, 109 S.Ct. at 2951. Each juror may or may not believe certain evidence is mitigating; however, the constitution only requires that where a juror believes there is relevant mitigating evidence, that juror must have a vehicle to give his or her reasoned moral response to such evidence.[13] *Johnson, supra; Penry, supra.*

■ As for instructing the jury as to what weight should be given to the evidence, we have held that appellant "is not entitled to jury instructions specifically informing the jury that certain evidence may be considered or how it may be applied." *Lane v. State,* 822 S.W.2d 35, 39 (Tex.Crim.App.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1968, 118 L.Ed.2d 568 (1992) *(quoting Lauti v. State,* 810 S.W.2d 176, 178 (Tex.Crim.App.1989)); *Havard v. State,* 800 S.W.2d 195, 206 (Tex. Crim.App.1989); TEX.CODE CRIM.PROC.ANN. art. 36.14 (the trial court shall deliver to the jury "a written charge distinctly setting forth the law applicable to the case; not expressing any opinion as to the weight of the evidence …") (West 1990). Appellant was not entitled to an instruction on what evidence was mitigating or on what weight to give any mitigating evidence presented at trial. His eighth and ninth points of error are overruled.

■ In his tenth and eleventh points or error, appellant complains the trial court erred in failing to instruct the jury that it need not be unanimous as to any matter of mitigation and that if ten jurors concurred in a belief the defendant should not be sentenced to death then they should answer "no" to one of the special issues. The trial court instructed the jury that

> you may not answer a special issue "Yes" unless the jury unanimously concurs, and in such event, the verdict form for such special issue shall be signed by your presiding juror. You may not answer a special issue "No" unless 10 or more jurors concur, and in such event, your presiding juror shall sign the verdict form.

> You are further instructed that if any juror, after due deliberation and considering all the evidence and the instructions, has a reasonable doubt as to whether the answer to a special issue should be answered "yes" then such juror should vote "no" to that special issue.

The trial court then instructed the jury on the nature and effect of mitigating evidence, *supra.*

Appellant claims the language cited above is applicable to only the special issues and that the charge failed to inform the jury of the effect of ten jurors believing there is sufficient mitigating evidence to warrant a sentence of life. We have previously upheld a trial court's denial of similar instructions. *Rousseau,* 855 S.W.2d at 686–87; *Nobles,* 843 S.W.2d at 508–09; *Draughon,* 831 S.W.2d at 337–38.

---

**13.** In *Teague v. State,* we addressed the propriety of a challenge for cause where the veniremember stated he would not consider a defendant's age to be mitigating where the defendant was "legally of age." 864 S.W.2d 505, 513 (Tex.Crim.App. 1993). We stated,

> A trial court abuses its discretion in overruling a challenge for cause to a veniremember who cannot follow the law. *See Trevino v. State,* 815 S.W.2d 592, 614 (Tex.Crim.App.1991), *rev'd on other grounds,* [— U.S. —] 112 S.Ct. 1547 [118 L.Ed.2d 193] (1992). The law requires a juror at least to consider youth as a mitigating factor in answering the special issues. See *id.* Here, however, [the veniremember] was not informed the law required him to consider youth or age in mitigation of punishment. Therefore, appellant cannot

demonstrate [the veniremember] had a bias against this phase of the law.

*Id.* While it makes no difference to the propriety of our ruling in *Teague,* we believe our opinion there misstated the applicable law. We do not believe the law *requires* a juror to consider *youth as mitigating.* See *Cuevas v. State,* 742 S.W.2d 331, 345–346 (Tex.Crim.App.), *cert. denied,* 485 U.S. 1015, 108 S.Ct. 1488, 99 L.Ed.2d 716 (1987); *Cordova v. State,* 733 S.W.2d 175, 189 (Tex.Crim.App.), *cert. denied,* 487 U.S. 1240, 108 S.Ct. 2915, 101 L.Ed.2d 946 (1987). A juror may consider youth to be either mitigating, or, in some instances, aggravating. *Johnson v. Texas,* — U.S. at —, 113 S.Ct. at 2669–2670; *Graham v. Collins,* 506 U.S. —, — – —, 113 S.Ct. 892, 910, 122 L.Ed.2d 260 (1993). To the extent that our opinion in *Teague* contradicted

The jury was instructed that the verdict form should reflect a "yes" or "no" answer to the special issues, *supra.* Directly following this section, the jury was instructed that if any juror believes there are mitigating circumstances such that the defendant should not be put to death, they are to answer one of the special issues "no." The second section pertains to a juror's individual answers, while the first applies to the answers reflected on the verdict form. Consequently, we believe it was clear that if ten jurors believed there was mitigating evidence and that the defendant deserved a sentence of life rather than death, then the verdict form should reflect a negative answer to one of the special issues. The only decision remaining for the jury is in deciding which of the two special issues should they cast the negative vote.

Further, while the jury was not informed of the consequences of a single negative vote, if one juror believed, after consideration of the nullification charge, that the defendant should not be put to death then that juror could then vote no to one of the special issues, and the jury would not be able to answer the special issues. By operation of law, where the jury is unable to reach a verdict during punishment of a capital case, the defendant is sentenced to life. TEX.CODE CRIM.PROC.ANN. art. 37.071(e). Accordingly, appellant's tenth and eleventh points of error are overruled.

V.

In his fifteenth, sixteenth, and seventeenth points of error, appellant objects to the trial court's failure to define "beyond a reasonable doubt," "criminal acts of violence," and "probability," respectively. This Court has previously held a trial court does not err in refusing to define the terms "criminal acts of violence" and "probability." *Cantu v. State,* 842 S.W.2d 667, 691 (Tex.Crim.App.1992).

At the time of appellant's trial, a trial judge was not required to define or amplify

the phrase "beyond a reasonable doubt." *Goss v. State,* 826 S.W.2d 162, 169 (Tex.Crim. App.1992). However, appellant urges that we reconsider our decision in *Geesa v. State,* in which we provided a definition for "beyond a reasonable doubt," to be applied prospectively. 820 S.W.2d 154, 163–64 (Tex.Crim. App.1991). We decline to revisit the retroactivity decision in *Geesa.* Appellant's fifteenth through seventeenth points of error are overruled.

VI.

 In his eighteenth and final point of error, appellant contends the trial court erred by failing to instruct the jury that his oral confession to Sergeant Medina should not be considered by the jury unless they determine that appellant had been properly warned as to his rights under article 38.22, section 2(a)(5) of the Texas Code of Criminal Procedure.[14] *See* TEX.CODE CRIM.PROC.ANN. art. 38.22 § 3(a). There is no contention by appellant that he was not read his *Miranda*[15] warnings. However, the Las Vegas police failed to inform appellant he had the right to terminate the interview at any time, a right not expressly among those required by *Miranda, supra.*

 The flaw in appellant's argument is his assertion that the oral confession was admitted under article 38.22, section 3(a), rather than under section 3(c). Section 3(a) requires that all warnings set out in section 2, including the right to terminate the interview, be read to a defendant. Section 3(c) provides,

> Subsection (a) of this section shall not apply to any statement which contains assertions of facts or circumstances that are found to be true and which conduce to establish the guilt of the accused, such as the finding of secreted or stolen property or the instrument with which he states the offense was committed.

this, we expressly disavow such language here today.

14. Initially we note that article 38.22, section 3(a)(2) requires that prior to any oral confession being admitted in a criminal proceeding, the warnings set out in section 2(a), including sub-

section 5, shall be given. Section 2(a)(5) provides that an accused be informed that "he has the right to terminate the interview at any time."

15. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

TEX.CODE CRIM.PROC.ANN. art. 38.22(3)(c) (West 1990). The only warnings which must precede an oral confession admitted under section 3(c) are the *Miranda* warnings. *Perillo v. State*, 758 S.W.2d 567, 575 (Tex.Crim. App.1988), *cert. denied*, 492 U.S. 925, 109 S.Ct. 3263, 106 L.Ed.2d 608 (1989). In this instance, appellant informed Sergeant Medina of the crime, *as well as* the crime weapon and its location. Appellant confessed to the Sergeant that he had used a .38 caliber pistol, that he had stolen the gun from a car parked at a club in Dallas, and that the gun was in a jewelry box on the floor board in the back seat of the stolen blue Cadillac. Pursuant to appellant's directions, the Nevada police officers located the alleged murder weapon. That weapon was identified by Texas forensic authorities as the murder weapon. Because the confession contains assertions of facts which were found to be true and which help establish appellant's guilt, the confession was admissible under article 38.22, section 3(c) of the Texas Code of Criminal Procedure. Appellant's eighteenth and final point of error is overruled.

The judgement of the trial court is affirmed.

CLINTON, J., dissents.