**Opinion filed January 13, 2022**



# In The

# Eleventh Court of Appeals

_____

## No. 11-20-00013-CR

_____

### KEVIN LEE ROBERTS, Appellant

### V.

### THE STATE OF TEXAS, Appellee

**On Appeal from the 161st District Court**
**Ector County, Texas**
**Trial Court Cause No. B-18-0389-CR**

### M E M O R A N D U M   O P I N I O N

The jury convicted Kevin Lee Roberts of capital murder. The State waived the death penalty. Therefore, Appellant was sentenced to life without parole in the Institutional Division of the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 12.31(a)(2) (West 2019). Appellant challenges his conviction in two issues. We affirm.

*Background Facts*

The State charged Appellant by indictment with the offense of capital murder. The State alleged that while in the course of committing or attempting to commit the offense of robbery of Ashley Williams, Appellant intentionally caused the death of Williams by cutting or stabbing her with a knife or by choking or strangling her.

Appellant resided at the Quail Run Apartments in Odessa with his roommate, Kevin Ramirez. Before becoming roommates with Ramirez, Appellant had been evicted from another apartment at the same complex. In the days leading up to Williams's death, Appellant struggled to come up with his half of the rent. On December 12, 2017, Appellant told Ramirez that he had been approved for a loan to cover his half of the rent. To help Appellant in getting the loan, Ramirez sent his girlfriend, Williams, in Ramirez's car, to give Appellant a ride to the loan office because Ramirez was at work.

Appellant testified at the guilt/innocence phase of trial. He testified that when Williams arrived at the apartment, she discovered him packing his things. A violent argument broke out between her and Appellant. During this altercation, Appellant killed Williams. While Appellant and Williams were arguing, Appellant's neighbor called the police because he could hear arguing and banging on the walls. Officer Jorge Amezola responded to Appellant's neighbor's call for service. Officer Amezola immediately went to Appellant's apartment to see if he could hear any signs of a struggle. Officer Amezola heard no signs of a struggle and proceeded to knock on Appellant's door. When no one answered the door, Officer Amezola left the apartment complex.

After killing Williams, Appellant began cleaning the apartment and continued packing his things to leave town. Appellant briefly stopped cleaning when Officer Amezola knocked on the door. However, Appellant remained silent to give Officer

2

Amezola the impression that no one was home. Once Appellant finished packing and cleaning, he discarded his cleaning supplies and the murder weapon, a knife, in a dumpster behind the apartment complex. Appellant then loaded Ramirez's car with several of Ramirez's personal belongings and a duffle bag carrying Williams's body. Appellant planned on driving to Pennsylvania to live with his cousin who had offered in the past to let him live with her. Before Appellant left town for Pennsylvania, he dumped Williams's remains in an area he knew to have a lot of gang activity. He also stopped at a pawnshop to sell the items that he took from Ramirez. Appellant completed his transaction at the pawnshop and set off eastbound on Interstate 20.

Throughout the day, on December 12, Ramirez had been trying to contact both Appellant and Williams. Ramirez began to grow concerned because Williams usually always responded, and she was supposed to pick him up from work that day in the car that he had loaned her. After working a full day, Ramirez asked one of his coworkers to take him home to the Quail Run Apartments. Upon arriving at the apartment, Ramirez knocked on the door in hopes of either Appellant or Williams answering the door. When nobody opened the door, Ramirez went to the office of the apartment and obtained the spare key to his apartment. Ramirez used the spare key to open the door to his apartment, and he quickly noticed the smell of bleach. He also noticed that several of his personal belongings were missing. Ramirez then called the police to report the suspected burglary of his apartment. Additionally, Ramirez called Williams's parents to let them know that he did not know where she was.

Officer James Kipper responded to Ramirez's 9-1-1 call. By the time Officer Kipper arrived, Ronnie Williams, Williams's father, had also arrived at the apartment. Officer Kipper immediately smelled a strong odor of bleach in the

3

apartment and noticed blood stains on the carpet. After securing the apartment as a crime scene, Officer Kipper then discovered trails of blood on the sidewalk outside the apartment leading to the alleyway behind the complex. Once other detectives began arriving on scene, Officer Kipper filed a stolen vehicle report for Ramirez's vehicle and a missing person report for Williams. Additionally, Officer Kipper contacted OnStar to locate Ramirez's stolen vehicle. OnStar discovered that Ramirez's missing vehicle was traveling eastbound on Interstate 20.

With the information that Appellant was traveling eastbound on Interstate 20, State Trooper Brian Powell was able to locate and stop Appellant near Weatherford. During the stop, Trooper Powell noticed that there was blood on the back bumper of the vehicle. Law enforcement took Appellant into custody and transported him, along with the stolen vehicle, to the Parker County Jail.

When Appellant arrived at the jail, Texas Ranger Anthony Bradford began to interview Appellant. Both Appellant and Ranger Bradford testified that Appellant waived his Fifth Amendment rights. During the interview, Appellant admitted to murdering Williams. Additionally, Appellant drew two separate diagrams indicating where the knife and Williams's remains were located. Appellant explained that he murdered Williams because he only had three options: commit suicide; become homeless; or kill someone and take their car to begin his new life in Pennsylvania. Ranger Bradford then communicated this information to Ranger Brian Burney in Odessa. Upon receiving this information, law enforcement in Odessa went to the locations indicated on Appellant's diagrams and located both the knife and Williams's remains.

Following Appellant's arrest, Charity Beherec conducted a DNA test on swabs on the trunk of Ramirez's car, the floor of Appellant's apartment, the duffle bag, and the knife used in the murder. Beherec concluded that only Williams's DNA

could be conclusively established in the test of the trunk, floor, and duffle bag. Beherec also determined that the knife contained both Williams's and Appellant's DNA.

At trial, the State offered Appellant's recorded confession. Before the jury heard the confession, Appellant objected to it on the basis that his waiver of his rights against self-incrimination was not done knowingly, intelligently, or voluntarily. The trial court overruled Appellant's objection.

*Analysis*

In Appellant's first issue, he challenges the sufficiency of the evidence supporting his capital murder conviction. Specifically, Appellant contends that the evidence was insufficient to show that he "committed the offense of capital murder in the course of committing the offense of robbery of Ashley Williams." We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.— Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's

duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, appellate courts are not permitted to use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Instead, appellate courts must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

A person commits capital murder if "the person intentionally commits the murder in the course of committing or attempting to commit . . . robbery." PENAL § 19.03(a)(2) (West Supp. 2021). As used in Section 19.03(a)(2), "in the course of committing" an offense means "conduct occurring in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of the offense." *Robertson v. State*, 871 S.W.2d 701, 705 (Tex. Crim. App. 1993) (citing *Garrett v. State*, 851 S.W.2d 853, 856 (Tex. Crim. App. 1993); *Riles v. State*, 595 S.W.2d 858, 862 (Tex. Crim. App. 1980)); *Dawkins v. State*, 495 S.W.3d 890, 895 (Tex. App.—Houston [14th Dist.] 2016, no pet.). For a murder to qualify as capital

6

murder, the intent to rob must be formed prior to or concurrent with the murder. *Robertson*, 871 S.W.2d at 705; *Dawkins*, 495 S.W.3d at 895. Proof that the defendant formulated the intent to commit a robbery as an afterthought is insufficient to support a capital murder conviction. *Herrin v. State*, 125 S.W.3d 436, 441 (Tex. Crim. App. 2002) (citing *Connor v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001)); *White v. State*, 779 S.W.2d 809, 814–15 (Tex. Crim. App. 1989).

The State must prove that the murder occurred to facilitate the taking of the property. *Moody v. State*, 827 S.W.2d 875, 892 (Tex. Crim. App. 1992); *Ibanez v. State*, 749 S.W.2d 804, 807 (Tex. Crim. App. 1986); *Dawkins*, 495 S.W.3d at 895. However, the actual appropriation may occur after the murder. *Zimmerman v. State*, 860 S.W.2d 89, 93 (Tex. Crim. App. 1993). The requisite intent may be inferred from the actions or conduct of the appellant. *See Robertson*, 871 S.W.2d at 705; *Dawkins*, 495 S.W.3d at 895. A jury may infer from a theft committed immediately after a murder that the murder was intended to facilitate a robbery. *Russo v. State*, 228 S.W.3d 779, 793 (Tex. App.—Austin 2007, pet. ref'd) ("[T]he general rule is still that a theft occurring immediately after an assault will support an inference that the assault was intended to facilitate the theft." (citing *Cooper v. State*, 67 S.W.3d 211, 224 (Tex. Crim. App. 2002))). Thus, we must determine whether any rational factfinder could have found beyond a reasonable doubt that Appellant murdered Williams and that he formed the intent to rob Williams prior to or concurrent with her murder. *See Dawkins*, 495 S.W.3d at 895; *see also Robertson*, 871 S.W.2d at 705; *White*, 779 S.W.2d at 815.

Intent to commit a particular crime may be inferred "from circumstantial evidence such as acts, words, and the conduct of the appellant." *Patrick v. State*, 906 S.W.2d 481, 487 (Tex. Crim. App. 1995). Evidence of a person's motive is also a significant indicator of guilt. *Harris v. State*, 727 S.W.2d 537, 542 (Tex. Crim.

App. 1987). The jury may consider a person's dire financial status as evidence of his or her intent to commit a theft either before or at the time of an assault. *Walter v. State*, 581 S.W.3d 957, 974 (Tex. App.—Eastland 2019, pet. ref'd) (citing *Nelson v. State*, 848 S.W.2d 126, 132 (Tex. Crim. App. 1992)).

Appellant places great weight on his own testimony denying that he formed the intent to rob Williams before he murdered her. He claims that in the moments leading up to the murder, and during it, he had blacked out. In Appellant's confession to Ranger Bradford, however, Appellant stated that he murdered Williams because he only had three options at the time. Those three options were (1) suicide, (2) become homeless, or (3) kill someone and start a new life. Appellant also stated during his confession that killing someone was the only way he could get a vehicle. Taken together, the jury was free to reject Appellant's self-serving testimony and assign more weight to his confession.

The jury also heard testimony concerning Appellant's financial situation. The State presented evidence that the Quail Run Apartments had previously evicted Appellant for nonpayment of rent and that it was on the verge of doing so again. Appellant's roommate, Ramirez, had paid his half of the rent, but Appellant had failed to pay his half. Shara Ward, the manager of Quail Run Apartments, served Appellant and Ramirez with an eviction notice on December 11, 2017. This eviction notice required both Appellant and Ramirez to be out of the apartment in twenty-four hours or pay the remaining balance of their delinquent rent.

Additionally, Appellant testified that in the week leading up to the murder and his pending eviction, he had applied for four or five different loans. Also on December 12, 2017, Appellant and Ramirez had agreed that Appellant would apply for another loan to pay his portion of the rent, and Williams would drive Appellant to the loan office and to get emergency food stamps. However, before Williams

8

arrived at the apartment to drive Appellant to the loan office, Appellant learned that he had been denied the loan, but he did not inform either Ramirez or Williams of that information. In the time between learning that he had been denied the loan and Williams's arrival, Appellant began packing his things to leave the apartment.

Evidence also showed that Appellant had been trying for several months to get to Pennsylvania to move in with his cousin but that he had been unsuccessful in that endeavor. However, as soon as Appellant murdered Williams and performed a quick cleanup of the apartment, he took Ramirez's car. Appellant also took several other items of Ramirez's personal belongings to fund his journey to Pennsylvania.

The jury heard evidence of Appellant's dire financial situation, his failure to inform his roommate that he was denied a loan the day they were supposed to be evicted, and his immediate theft of the car and other personal belongings following the murder of Williams. Taken together, this evidence and Appellant's confession would allow a rational jury to conclude that Appellant formulated the intent to rob Williams either before or while he was murdering her. It is irrelevant that Appellant's testimony was contrary to the jury's verdict because the jury was responsible for determining the credibility of witnesses and it was free to reject Appellant's self-serving testimony. *See Brooks*, 323 S.W.3d at 899. We overrule Appellant's first issue.

In Appellant's second issue, he asserts that the trial court erred by admitting his confession into evidence because the admitted recording of the confession did not comply with the requirements of Article 38.22, section 3(a)(2) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(2) (West 2018). Specifically, Appellant asserts that the trial court should have excluded the recording of his confession, State's Exhibit 134, because it did not include Ranger Bradford reading Appellant his *Miranda* rights or Appellant waiving those rights.

Article 38.22 contains a number of subsections that set out the requirements for the admission of a defendant's recorded statement. *See Resendez v. State*, 306 S.W.3d 308, 313 (Tex. Crim. App. 2009). Section 3(a)(2) provides as follows:

> (a) No oral or sign language statement of an accused made as a result of custodial interrogation shall be admissible against the accused in a criminal proceeding unless: . . . (2) prior to the statement but during the recording the accused is given the warning in Subsection (a) of Section 2 above and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning. . . .

CRIM. PROC. art. 38.22, § 3(a)(2). State's Exhibit 134 did not include Ranger Bradford reading Appellant his rights or Appellant's waiver of his rights.

In order to preserve error for appellate review, the defendant must bring the specific violation of Article 38.22 that he or she asserts to the trial court's attention, including the statutory requirement of Section 3(a)(2) for the warnings required by Section 2(a) to be memorialized on the recording. *Resendez*, 306 S.W.3d at 313–17; *see* CRIM. PROC. art. 38.22, § 2(a). As noted by the Texas Court of Criminal Appeals in *Resendez*, "[t]he purpose of requiring a specific objection in the trial court is twofold: (1) to inform the trial judge of the basis of the objection and give him the opportunity to rule on it; (2) to give opposing counsel the opportunity to respond to the complaint." 306 S.W.3d at 312 (citing *Zillender v. State*, 557 S.W.2d 515, 517 (Tex. Crim. App. 1977)).

Prior to trial, Appellant filed a motion to determine whether his confession to the police was admissible. The relevant portions of Appellant's pretrial motion stated as follows:

> 4. The circumstances and nature of the statement raise the question of the voluntariness of the statement. Specifically, whether KEVIN LEE ROBERTS received the proper legal warnings necessary to admit the statement into evidence at trial under the authority of . . . *Miranda v. Arizona*, 384 U.S. 436, . . . (1966), the Fourth, Fifth, Sixth, and Fourteenth Amendments to the United States Constitution,

10

Article I, Section 9, 10 and 19 of the Constitution of the State of Texas, and article 38.22 of the Texas Code of Criminal Procedure.

5. Article 38.22 (Sections 2 and 3) of the Code requires that prior to making the statement, KEVIN LEE ROBERTS receive a warning from either a magistrate or the person to whom the statement was made . . . .

6. The Code requires further that prior to and during the making of the statement, KEVIN LEE ROBERTS knowingly, intelligently, and voluntarily waive the rights set forth.

Movant requests that the Court make a determination of whether or not the Code provisions were met in this instance and to determine the admissibility of the statement of KEVIN LEE ROBERTS.

During trial, the trial court held a hearing on Appellant's motion to suppress the statement. The purpose of the hearing was to determine if Appellant's statement to Ranger Bradford was voluntary. Appellant's trial counsel stated his argument as follows:

With respect to requirements of 38.22. It is not that the Ranger didn't follow procedure. It is that Mr. Roberts' waiver must be knowingly, intelligently and voluntarily made. I would argue to the Court that his statement should be excluded under Article 38.22. Under the 4th Amendment, 5th Amend[ment], 6th and 14th Amendments to the United States Constitution, and to the extent that the Texas Constitution gives Mr. Roberts more protection of seeking its exclusion under Article 1, Section 9, 10 and 19.

Thus, Appellant's objection to the statement was primarily that it was not knowingly, intelligently, and voluntarily given.

As noted in *Resendez*, an objection to the voluntariness of a statement is a constitutional claim rather than a claim under the statute. 306 S.W.3d at 316. Appellant's general reference to Article 38.22 in stating his objection was insufficient to preserve error with respect to a specific complaint under one of the many subsections of the statute. *Id.* at 313. Moreover, Appellant's trial counsel

11

stated to the trial court that he was not asserting that Ranger Bradford did not follow proper procedure when taking Appellant's recorded statement.[1]   When the prosecutor later offered State's Exhibit 134, Appellant's trial counsel re-urged the same grounds.  Thus, Appellant did not preserve his procedural complaint under Article 38.22, section 3(a)(2) for appellate review.[2]   Accordingly, we overrule Appellant's second issue.

<em>This Court's Ruling</em>

We affirm the judgment of the trial court.


JOHN M. BAILEY<br>CHIEF JUSTICE


January 13, 2022

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.

---

[1]Ranger Bradford testified that he gave the required warnings to Appellant prior to taking his statement, and that Appellant appeared to understand that he was waiving his rights by giving a statement. On cross-examination, Appellant testified that he both received and voluntarily waived his *Miranda* rights. Ranger Bradford also testified that the warnings he gave Appellant were recorded and that he had listened to the recording to confirm this fact.

[2]Based on Ranger Bradford's statement that he recorded his warnings to Appellant, it appears that State's Exhibit 134 was a partial version of Appellant's recorded statement.  Had Appellant objected on the basis that the recording admitted at trial did not memorialize the warnings given to Appellant, the prosecutor could have sought to offer a version of the recording containing the warnings.  *See Resendez*, 306 S.W.3d at 312 (noting that one of the purposes of the requirement to preserve error is to give opposing counsel the opportunity to respond to the complaint).