NUMBER 13-96-321-CR



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI


___________________________________________________________________


DANIEL MIRELES
, Appellant,


v.



THE STATE OF TEXAS
, Appellee.

___________________________________________________________________


On appeal from the 329th District Court


of Wharton County, Texas.


____________________________________________________________________


OPINION ON REMAND



Before Justices Dorsey, Hinojosa, and Rodriguez


Opinion by Justice Rodriguez



 This case is before us on remand from the Texas Court of Criminal Appeals. A
jury found appellant, Daniel Mireles, guilty of the capital murder of Martin Hernandez,
and the trial court assessed punishment at confinement for life. In one point of error,
appellant asserted the trial court erred in denying his motion for an instructed verdict
because there was insufficient evidence to convict him of capital murder. Reviewing
the evidence for legal sufficiency, this Court held there was some evidence in the
record to substantiate the jury's verdict and overruled appellant's point of error. See
Mireles v. State, No. 13-06-321-CR, slip op. at 4-8, (Tex. App.--Corpus Christi Oct.
30, 1997) (not designated for publication), rev'd per curiam, 994 S.W.2d 148, 150
(Tex. Crim. App. 1999). We also entertained unassigned error to determine whether
the evidence was factually sufficient to sustain the robbery element of appellant's
conviction, specifically the intent to obtain or maintain control of property.(1) See id.,
slip op. at 8-9. Concluding the evidence was factually insufficient, we reversed and
remanded for a new trial. See id., slip op. at 10.

 The court of criminal appeals, in a per curiam opinion, granted the State's
petition for discretionary review, reversed our judgment on the factual sufficiency
issue, and remanded for reconsideration of factual sufficiency pursuant to the
standards and procedures mandated by Clewis v. State, 922 S.W.2d 125, 134-36
(Tex. Crim. App. 1996) (evidentiary review for affirmative defense). See Mireles v.
State, 994 S.W.2d 148, 149 (Tex. Crim. App. 1999). After such reconsideration, we
affirm the judgment of the trial court.

 On remand, appellant challenges only the factual sufficiency of the evidence to
establish "whether before or during the violent act or murder on the deceased . . .
[a]ppellant form[ed] the intent to take the property. . . ." Appellant asserts that the
State's case for conviction for capital murder is an unjust, unconscionable and biased
result.

 Appellant was charged with capital murder, wherein the State was required to
prove that (1) the defendant, (2) intentionally, (3) caused the death of the deceased,
(4) while in the course of committing or attempting to commit robbery. Tex. Penal
Code Ann. § 19.02(a) (Vernon 1974) and § 19.03(a)(2) (Vernon 1985).(2) The offense
of robbery is described as follows: 

 A person commits [robbery] if in the course of committing theft as
defined by Chapter 31 and with intent to obtain or maintain control of the
property, he:


 (1) intentionally, knowingly, or recklessly causes bodily injury
to another; or


 (2) intentionally or knowingly threatens or places another in
fear of imminent bodily injury or death.


Tex. Penal Code Ann. § 29.02(a) (Vernon 1974).(3) A person commits the offense of
theft if he unlawfully appropriates property with intent to deprive the owner thereof. 
Tex. Penal Code Ann. § 31.03(a) (Vernon 1987).(4) The legislature specifically defined
"in the course of committing theft" to mean "conduct that occurs in an attempt to
commit, during the commission, or in immediate flight after the attempt or commission
of theft." Tex. Penal Code Ann. § 29.01(1) (Vernon 1974).(5) 

 In order for murder to qualify as capital murder, the intent to rob must be
formed prior to or concurrent with the murder. Robertson v. State, 871 S.W.2d 701,
705 (Tex. Crim. App. 1993); Garrett v. State, 851 S.W.2d 853, 856 (Tex. Crim. App.
1993). In Cruz v. State, 629 S.W.2d 852 (Tex. App.--Corpus Christi 1982, pet.
ref'd), this Court held: 

 In order to sustain a conviction for capital murder, the State must show
that the murder occurred while the appellant was in the course of
committing or attempting to commit robbery. (Citation omitted.) Murder
and a subsequent theft do not constitute capital murder unless the
violent conduct causing death was done with the intent to obtain or
maintain control over the victim's property.


Id. at 858-59 (emphasis in original).

 To clarify two previous opinions, the court of criminals appeals wrote on the
issue of intent to obtain and maintain control of the decedent's property .(6) See Nelson
v. State, 848 S.W.2d 126, 132 (Tex. Crim. App. 1992).

 [W]e recognize that it is possible to have murder followed by theft
without having murder in the course of robbery. What elevates the
occurrence of theft to robbery is the presence, at the time of, or prior to,
the murder, of the intent to obtain or maintain control of the victim's
property.


Id. In Nelson, whether the defendant murdered his victim during the commission of
robbery turned on whether the intent to commit the theft preceded or coincided with
the murder. Id. at 131-32. Thus, if the State proves the requisite intent was present,
it has proven a murder occurred in the course of robbery, although the appropriation
occurred after the murder. Id. at 132. Intent, ordinarily determined not by direct proof
but by circumstantial evidence, may be inferred from the acts, words or conduct of the
accused, including the circumstances surrounding the acts in which the accused
engages. See McGee, 774 S.W.2d at 234; Salisbury v. State, 867 S.W.2d 894, 897
(Tex. App.--Houston [14th Dist.] 1993, no pet.) (citations omitted). Therefore, in the
present case, the point at which appellant formulated his intent to take Hernandez's
property is critical to differentiating between his commission of capital murder in the
course of robbery and his commission of first degree murder followed by theft from
a corpse, a third degree felony. See Tex. Penal Code Ann. § 31.03(e)(4)(B) (Vernon
1987).(7)

 In reviewing the factual sufficiency of the evidence, we view all of the evidence
without the prism of "in the light most favorable to the prosecution." Clewis, 922
S.W.2d at 129. We may consider all of the evidence equally, including the existence
of alternative hypotheses. Stone v. State, 823 S.W.2d 375, 381 (Tex. App.--Austin
1992, pet. ref'd, untimely filed). We must, however, remain appropriately deferential
to the fact finder's determination. Clewis, 922 S.W.2d at 133; see Tex. Code Crim.
Proc. Ann. art. 38.04 (Vernon 1979) (the jury is the exclusive judge of facts proved
and weight given to testimony). It is not enough that we believe a different result is
more reasonable. Clewis, 922 S.W.2d at 135. Disagreeing with "the fact finder's
determination is appropriate only when the record clearly indicates such a step is
necessary to arrest the occurrence of a manifest injustice." See Johnson v. State, No. 
1915-98, slip op. at 12-13, 2000 WL 140257, *6 (Tex. Crim. App. Feb. 9, 2000)
(en banc) (evidentiary review for elements of offense). We will set aside the verdict
only if it is so contrary to the overwhelming weight of the evidence that it is clearly
wrong and unjust. Clewis, 922 S.W.2d at 133.

 The court of criminal appeals recently clarified factual sufficiency review under
Clewis. See Johnson, 2000 WL 140257 at *8. In Johnson, the court concluded the
appropriate scope of a criminal factual sufficiency review of the elements of the
offense encompasses both formulations utilized in civil jurisprudence. See id. "[T]he
evidence can be factually insufficient if (1) it is so weak as to be clearly wrong and
manifestly unjust, or (2) the adverse finding is against the great weight and
preponderance of the available evidence." Id.

 Therefore, the complete and correct standard a reviewing court
must follow to conduct a Clewis factual sufficiency review of the
elements of a criminal offense asks whether a neutral review of all the
evidence, both for and against the finding, demonstrates that the proof
of guilt is so obviously weak as to undermine confidence in the jury's
determination, or the proof of guilt, although adequate if taken alone, is
greatly outweighed by contrary proof.


Id. (citing Mata v. State, 939 S.W.2d 719, 729 (Tex. App.--Waco 1997, no pet.) 
(Vance, J., concurring)).

 If the court of appeals finds factual insufficiency, the court should support its
finding by providing a detailed explanation of that finding so the court of criminal
appeals can ensure that proper deference was accorded to jury findings. Mireles, 994
S.W.2d at 149 (citing Clewis, 992 S.W.2d at 136). The court should also "clearly
state why the jury's finding is factually insufficient . . . as to be manifestly unjust; why
it shocks the conscience; or clearly demonstrates bias. Further, [the court] should
state in what regard the contrary evidence greatly outweighs the evidence in support
of the verdict." Mireles, 994 S.W.2d at 149 (citing Clewis, 992 S.W.2d at 135
(citation omitted)); see also Cain v. State, 958 S.W.2d 404, 407 (Tex. Crim. App.
1997)).

 The State relied on the testimony of four persons to whom appellant allegedly
confessed.(8) Darlene Camacho, appellant's common-law wife, testified that on the
night of November 12, 1992, appellant returned home at about 2:35 a.m. and woke
her. She observed appellant holding two bullet shells, a billfold and a gun. Appellant
gave Camacho the billfold and she opened it. Inside she saw Hernandez's prison
identification card, a key and possibly one dollar.(9) The next day, after Camacho
noticed one of appellant's rings was missing, she and appellant drove to a location off
a back road in Wharton County where appellant parked the car, got out, and began
looking for the ring. Camacho testified that, at this point, she saw "some legs from
a body" as well as "blue jeans and a pair of boots." She recognized the boots as
belonging to Hernandez.

 Alex Quinonez testified appellant arrived at his house earlier in the morning on
November 12, 1992, and told him that he shot Hernandez in the head and hid the
body. Appellant asked Quinonez to be his alibi. No questioning was directed to
Quinonez regarding the wallet or any robbery.

 Antonio Vallejo, a prison inmate, testified appellant bragged to him about killing
Martin Hernandez "for a drug transaction that had gone wrong. . . ." Vallejo further
testified appellant stated he had killed Hernandez because appellant "had found
[Hernandez] some cocaine and he never paid [appellant] back and that's why he killed
him" and "that after he shot him, those kind of people deserved to die. . . ." Appellant
told Vallejo that he had taken the wallet along with a small amount of money. Vallejo
testified that appellant told him he did it "because it was in his nature."

 Norman Crittenden, another fellow prison inmate from whom appellant solicited
legal advice, provided the following testimony:

 Q. Just tell me specifically about what [appellant] said about this
killing, okay?


 * * * 


 A. So he started telling me about this guy. He supposed to be having
an affair with some female officer somewhere and this guy that
was supposed to have caused a discrepancy between him and his
wife. Okay.


 And he said that he wanted to get the guy back or something like
that. Then he said he took the guy, he said he was going to fix
the guy. And I asked him, well, did you fix the guy, back and
forth questions. And --


 Q. Did he tell you if he had fixed the guy?

 

 A. Yes. . . . So after he took the guy out, the guy out to some field,
he had lured the guy out to some field making him believe that
they was going to make some type of drug transaction.


* * *

 Q. What did he say happened next?


 A. He said, "I got the guy out and got him on his knee." And he
started looking around, like this, like somebody watching, and then
he shot the guy in the back of the head. And then after that, I
said what happened? And he said he took the guy's wallet and
bandanna that the guy supposed to have been wearing everybody
know him, identify him as or something like that. And if you know
what a bandanna is, a scarf. A lot of people wear them.


 And he buried the wallet. Okay. And after that he said he got in
the car and left and he went to his house where his wife was at. 
And he tried to convince her that he got this guy, which
apparently his wife knew this guy. Okay.


* * *

 Q. He was just relating the story to you in general?


 A. Yes.


 Q. And after this -- let me see. He supposedly talk[ed] to the other
woman and then supposedly took the scarf and bandanna and the
gun and gave him [sic] to the home boys or his little posse that
runs around with him and they supposedly put [them] up in
someplace or somewhere as a token of history trying to indicate
what he done was supposed to have been something real big.


* * *


 Q. That's what he told you on that one occasion in the rec yard; is
that right?


 A. Yes.


 After considering all the evidence without the prism of "in the light most
favorable to the prosecution" and remaining appropriately deferential to the fact
finder's determination, we conclude there is factually sufficient evidence that
appellant formed the intent to obtain and maintain control of Hernandez's property
prior to or at the time of the murder.(10) Camacho testified appellant showed her the
wallet, which appellant had in his possession the night of the murder. Crittenden 
testified appellant told him he murdered the victim by shooting him at close range
and took Hernandez's wallet. Vallejo testified appellant told him Hernandez owed 
him money for cocaine, and that he had taken Hernandez's wallet and money. A
rational juror could have inferred from circumstantial evidence that appellant
murdered Hernandez and took his wallet because he wanted money from Hernandez,
and that appellant formed the intent to rob Hernandez prior to or concurrent with the
murder.(11) The fact finder's determination is not so inappropriate as to be manifestly
unjust.

 On remand, appellant argues the weight of the evidence demonstrates that,
rather than robbery, the motive for the alleged murder was revenge. There is
evidence that Hernandez caused a "discrepancy" between appellant and his wife, and
that appellant was angry at Hernandez because of a drug deal that had gone bad or
because of his unwillingness to satisfy a debt.

 Although there was evidence which provided an alternative motive for the
murder, the jury was not required to believe it. In Nelson, the court of criminal
appeals addresses alternative motives.

 Appellant suggests that there is an explanation for the murder that is
as equally consistent with the theory that he murdered Howard with
the intent to steal from him. . . . However, the jury was not required
to believe that the deceased looked at appellant in a lustful way. Nor
was it required to believe that was appellant's only motivation for killing
[the deceased] even if it felt that [the deceased] did so. We assume
that the jury considered all of the evidence and any potential inferences
and decided that appellant's theory was not reasonable. 

Nelson, 884 S.W.2d at 132. In the present case, the jury was not required to
believe that appellant was seeking revenge. Nor was it required to believe that
revenge was appellant's only motivation for killing Hernandez, even if it felt that
Hernandez had created a "discrepancy" between appellant and his wife, or had bad
dealings with appellant.

 We have completed a neutral review of all of the evidence, both for and
against the finding, and have summarized the relevant evidence above. We conclude
the proof of guilt is not so obviously weak as to undermine confidence in the jury's
determination; nor is it greatly outweighed by contrary proof. Furthermore, we
assume the jury in this case considered all the evidence and any potential inferences
and decided that appellant's theory regarding an alternative motive for the murder
was not reasonable. 

 Having reconsidered factual sufficiency pursuant to the standards 

and procedures mandated by Clewis, appellant's judgment of conviction is
AFFIRMED. 





 NELDA V. RODRIGUEZ

 Justice



Do not publish.

Tex. R. App. P. 47.3.


Opinion delivered and filed

this the 25th day of May, 2000.

 

1. A court of appeals, having acquired jurisdiction of criminal case, may entertain
unassigned error. See Whatley v. State, 947 S.W.2d 73, 79 (Tex. Crim. App. 1997);
State v. Lara, 924 S.W.2d 198, 206 n.3 (Tex. App.--Corpus Christi 1996, no pet.)
2. Amended by Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993
Tex. Gen. Laws 3586, 3613 (current version at Tex. Penal Code Ann. §§ 19.02(a) and
19.03(a)(2) (Vernon 1994)).
3. Amended by Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993
Tex. Gen. Laws 3586, 3632-33 (current version at Tex. Penal Code Ann. § 29.02(a)
(Vernon 1994)).
4. Amended by Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 10.01, 1993
Tex. Gen. Laws 3586, 3636 (current version at Tex. Penal Code Ann. § 31.03(a)
(Vernon 1994)).
5. Amended by Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993
Tex. Gen. Laws 3586, 3632 (current version at Tex. Penal Code Ann. § 29.01(1)
(Vernon 1994)).
6. The two previous opinions clarified were McGee v. State, 774 S.W.2d 229
(Tex. Crim. App. 1989) and Huffman v. State, 746 S.W.2d 21 (Tex. Crim. App.
1988).
7. Amended by Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993
Tex. Gen. Laws 3586, 3637-38. This crime is now classified as a state jail felony. 
Tex. Penal Code Ann. § 31.03(e)(4)(B) (Vernon 1994).
8. On remand, we address the sufficiency of the evidence offered by the State to
meet its burden of proof on the robbery element of appellant's conviction, and
delineate here only the testimony relating to this element.
9. Camacho was not sure whether the wallet contained money. Moreover, she
admitted that in her previous statements to the police, she never informed them the
wallet contained any money.
10. In our original opinion, we held Vallejo's testimony constituted legally sufficient
evidence from which a reasonable fact finder could infer appellant took Hernandez to
the secluded location where his body was later found for the purpose of robbing him
of the money Hernandez owed appellant for drugs and murdered him during the
commission of the robbery. See Mireles, slip op. at 8.
11. Although the emphasis has been on appellant's intent to take the wallet and
its contents, there is also testimony that he took Hernandez's bandanna. The jury may
have also inferred the intent to take the bandanna preceded or coincided with the
murder.