**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 00-10512**

---

**MARK ROBERTSON,**

**Petitioner-Appellant,**

**VERSUS**

**GARY JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF**
**CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,**

**Respondent-Appellee.**

---

Appeal from the United States District Court
For the Northern District of Texas

---

December 4, 2000

Before HIGGINBOTHAM, DeMOSS, and STEWART, Circuit Judges.

DeMOSS, Circuit Judge:

Petitioner Mark Robertson moves this Court for a certificate of appealability with respect to the district court's dismissal of his 28 U.S.C. § 2254 claims that his Texas state capital conviction was secured in violation of his Eighth and Fourteenth Amendment rights. Robertson seeks COA on two issues, both of which relate to the instructions given to the jury by the state trial court. Robertson first claims that the state trial court's refusal to charge the jury on the lesser included offense of murder (as

opposed to capital murder, which is statutorily defined to include certain aggravating elements that justify imposition of the death penalty in Texas) violated his Eighth and Fourteenth Amendment rights as set forth in Beck v. Alabama, 100 S. Ct. 2382 (1980), and its progeny. Robertson also claims that the trial court's decision to instruct the jury that it could answer one of the statutory special issues "no" (thus precluding assessment of the death penalty) if persuaded that mitigating evidence made the death penalty inappropriate, combined with the trial court's refusal to give the jury a third special issue expressly addressing the effect of mitigating evidence, violated his Eighth and Fourteenth Amendment rights as set forth in Penry v. Lynaugh, 109 S. Ct. 2934 (1989), and its progeny. We deny Robertson's petition for COA as to both issues.

## I. BACKGROUND

### A. The Crimes

Robertson was convicted and sentenced to death for the August 19, 1989 capital murder of Edna Brau in the course of a robbery of her home. Robertson is also serving a life sentence for the murder of Brau's grandson Sean Hill in the course of the same incident. Robertson is also serving a life sentence for the murder of a 19-year-old convenience store clerk during the course of a robbery on August 9, 1989, shortly before the Brau and Hill murders. The facts relating to Robertson's offense, arrest, and subsequent

2

convictions are as follows.

Edna Brau and her grandson, 19-year-old Sean Hill, were last seen alive on August 19, 1989, at Brau's Dallas, Texas home where both Brau and Hill lived. Hill's accommodations were in a separate wing of the house, with its own bath and an outside door providing independent access to the home. On the afternoon of August 20, 1989, Brau's daughter and son-in-law came to Brau's home and found her dead on the den sofa. Police later determined that Brau was shot once in the face. Hill was found dead in a pond behind the house. Hill was shot once in the back of the head. Brau's belongings in her portion of the residence, including the den, master bedroom, master bedroom dressing area, kitchen, and dining room were in disarray, as though someone had rummaged through the house. Brau's purse, her car keys, the papers on her car, and her blue Cadillac were all missing, together with other personal belongings.

## B. The Arrest and Subsequent Confessions

Eight days later, a Las Vegas police officer observed Robertson, accompanied by a male passenger, driving the stolen Cadillac on the Las Vegas strip. A NCIC computer check confirmed that the car was stolen and that the occupants might be armed and dangerous. Las Vegas police continued observing the car after it was parked in the parking lot of the Circus Circus casino. When Robertson and the passenger returned to the car, the police moved

3

in to apprehend both men.  The gun used to murder Brau and Hill was found in Brau's Cadillac.

At the arrest scene, Robertson informed police that they were lucky to have approached quickly, before he could retrieve the gun hidden under the seat.  Robertson asked police where the television cameras were and whether he was on America's Most Wanted.  When Las Vegas Sergeant Mark Medina inquired what he meant, Robertson confessed to Medina that he was on probation for robbery in Dallas and, further, that he had shot Edna Brau and her grandson Sean Hill in Dallas.  Robertson told Sergeant Medina that he went to the house to see Hill, who had been a friend and drug supplier of Robertson's.  Robertson claimed that he and Hill used some crank (crystal methamphetamine), and then went outside to go fishing.[1] Robertson told Sergeant Medina that while Hill was fishing, he shot Hill once in the back of the head with a .38 caliber firearm. Robertson told Medina that he wanted to steal Hill's drugs. Robertson also told Medina that he went into Brau's portion of the home because he wanted to find money, jewelry, and the title to Brau's car, which he planned to sell later.  Robertson shot Brau once in the head when he discovered her watching television on the couch in her den.[2]

---

[1]Contrary to Robertson's oral confession, the autopsy performed on Hill indicated that there were no drugs in Hill's body at the time of his death.

[2]Robertson later made consistent oral confessions to other officers.

4

Robertson also signed a written confession, in which he states:

On Saturday night around 9 PM I decided to walk over to Sean's house on Hathaway where he lived with his grandmother. When I got there, Sean was in his room watching T.V. We sat around watched TV and did some pot and crank. We then decided to go fishing out in the backyard. We were using one stick with a string and a hook. We would trade off, I think we caught some seven catfishes. While we were fishing, I think we were kneeling. I pulled my gun out of my pants and shot Sean once in the head. After I shot him, Sean fell in the water. I then ran in the house through Sean's bedroom and into the bathroom where I splashed some water over my face. I then walked into the den where Mrs. Hill, Sean's grandmother, was watching TV and I shot her once. I unplugged the TV because it was playing and so was the radio in the bedroom.

I looked through her bedroom drawers and found her purse on the make-up counter. I saw some costume jewelry but left it alone. I did take a wristwatch which I later threw away in a garbage can but I don't remember where. I then ran into Sean's room and took his crank which was left on the bed. I then drove off in Mrs. Hill's car. I went on home and then went to Showtime on Greenville and Lover's where I wiped it all down and left it there. I then walked back home. Next day while listening to the evening news I heard about their bodies being found. I couldn't sleep for the next couple of days so I figured that I would just leave. I walked back to the parking lot at Showtime where I got in the car and decided to drive to Las Vegas where my parents used to bring me. I had left the car in the parking lot. I threw the purse away in a dumpster at the Village Apts. I think that I left on Tuesday sometime around 4 PM. I drove all the way to Albuquerque, N. Mexico where I spent the night and the following day I drove to Vegas. I was staying at the SuLinda Motel in Vegas. I met Nikki two or three days later at the Circus-Circus. I used my roommate's money to get to Vegas. He had some $700.00 in cash in his room. I think that Mrs. Hill's purse had some $37.00 in cash which I took. These past few

5

days I didn't know what to do and when I got arrested I felt relieved for the most part because I didn't have to run anymore.

## II. PROCEDURAL HISTORY

### A. The Trial

Robertson was prosecuted in Texas for the three murders. With respect to Brau, Robertson was charged with capital murder committed in the course of a robbery. See Tex. Penal Code § 19.093 (a)(2) (West 1990). Robertson pleaded not guilty to Brau's murder and was tried by a jury, which returned a verdict of guilty to the charge of capital murder. Robertson did not present any evidence during the guilt phase of his capital trial.

During the punishment phase, the state presented evidence, inter alia, relating to Robertson's past criminal behavior, which included serious vandalism at about age 12, suspension for taking a loaded handgun to school at about age 13, car theft and destruction of property at about age 14, marijuana possession at about age 15, and a second marijuana possession resulting in conviction at about age 18, an aggravated robbery conviction involving a baseball bat and knife at about age 18, and thirteen cases of issuing bad checks at about age 19, after which he violated the terms of his probation on the aggravated robbery charge and the bad check charge by failing to report, failing to pursue drug counseling, and failing to perform community service. The state also presented extensive evidence relating to Robertson's

murder of the 19-year-old convenience store clerk only ten days before he killed Brau and Hill. Finally, the state produced records of Robertson's bad prison behavior since incarceration on the charge, including evidence of an escape attempt and a fire he set in his cell.

Robertson produced evidence that his father was alcoholic and both physically and emotionally abusive, that he was considered respectful and polite by some, that he had obtained a GED before quitting school, and that his girlfriend considered him a good person. Robertson also presented evidence of his struggle with drugs.

At the close of evidence, the jury received the following instruction, among many others:

> You are instructed that you shall consider any evidence, which, in your opinion, is mitigating. Mitigating evidence is evidence that reduces the defendant's personal or moral culpability, or blameworthiness, and may include, but is not limited to an aspect of the defendant's character, record, background, or circumstances of the offense for which you have found him guilty. Our law does not specify what may or may not be considered as mitigating evidence. Neither does our law provide a formula for determining how much weight, if any, a mitigating circumstance deserves. You may hear evidence, which in your judgment, has no relationship to any of the special issues, but if you find such evidence is mitigating under these instructions, you shall consider the following instructions of the court. You and each of you, are the sole judges of what evidence, if any, is mitigating and how much weight, if any, the mitigating circumstances, if any, including those which have no relationship to any of the special issues, deserves.

> You are instructed that some mitigating evidence, if any, may not be relevant to resolving the special issues but may be relevant in determining whether or not the defendant should be put to death.
>
> In answering the Special Issues submitted to you herein, if you believe that the State has proved beyond a reasonable doubt that the answers to the Special Issues are "Yes," and you also believe from the mitigating evidence, if any, that the defendant should not be sentenced to death, then you shall answer at least one of the Special Issues "No" in order to give effect to your belief that the death penalty should not be imposed due to the mitigating evidence presented to you. In this regard, you are further instructed that the State of Texas must prove beyond a reasonable doubt that the death sentence should be imposed despite the mitigating evidence, if any, admitted before you.

This instruction is referred to by both parties as the "nullification" instruction.

The jury returned affirmative answers to the statutory special issues submitted. In February 1991, the trial court sentenced Robertson to death.

**B.    On Direct Appeal**

On direct appeal, the Texas Court of Criminal Appeals affirmed, and the Supreme Court subsequently denied Robertson's petition for writ of certiorari. See Robertson v. State, 871 S.W.2d 701 (Tex. Crim. App. 1993), cert. denied, 513 U.S. 853 (1994).

The Texas Court of Criminal Appeals decision on direct appeal addressed several issues that are germane to the two issues that Robertson seeks a COA for here. Of particular relevance to

8

Robertson's first issue, his argument that he was entitled to a jury instruction on the lesser included offense of murder, Robertson argued that the evidence was insufficient to support his conviction for capital murder because the differentiating capital component, murder in the course of a robbery, was not proven. Robertson also argued, as he does now, that the trial court erred by refusing to give a jury charge on the lesser included offense of murder, which he claims was supported by the evidence because the jury could have reasonably rejected the state's evidence that Robertson killed Brau in the course of a robbery. Robertson argued that a non-capital conviction was possible because the jury could have believed that he did not form the intent to rob Brau until after he shot and killed her, which Robertson claims would have negated the element required to define his offense as a capital crime.

The Texas Court of Criminal Appeals rejected Robertson's arguments, holding that the government's evidence was sufficient to prove beyond a reasonable doubt that Robertson committed Brau's murder in the course of committing a robbery, as that element is defined by Texas law. See Robertson, 871 S.W.2d at 705 (holding that the intent to rob must be formed before the murder, but that there is no requirement that the wrongful appropriation take place before the murder). The Court also held that Robertson was not entitled to an instruction on the lesser included offense of murder, finding as a factual matter that the evidence did not

9

support Robertson's contention that a non-capital conviction was possible. See id. at 706.

Of particular relevance to Robertson's second issue, he also raised a number of arguments on direct appeal relating to the trial court's punishment phase instructions to the jury. Robertson argued that the trial court erred by submitting the lengthy instruction on the effect of mitigating evidence and that the trial court should have given a separate special issue permitting the jury to express its view of the role played by the mitigating evidence presented. Robertson also made other, related claims that, in sum, amounted to an allegation that the jury was not given an adequate vehicle for guiding its discretion to give weight to mitigating evidence.

The Texas Court of Criminal Appeals likewise rejected these arguments. The Court considered Robertson's claims in light of existing United States Supreme Court precedent. Specifically, the Court held that the "nullification" charge permitted, and indeed invited, the jury to consider all of the constitutionally relevant evidence, thus avoiding the constitutional infirmities condemned by Penry v. Lynaugh, 109 S. Ct. 2934 (1989). See Robertson, 871 S.W.2d at 710-11.

## C.    State Habeas Corpus

Three years later, Robertson filed a state petition for habeas corpus relief in the convicting court. The state court held an

evidentiary hearing, and then entered eighty-six separate findings of fact and conclusions of law, ultimately recommending that relief be denied.

Of particular relevance to Robertson's first issue, his argument that he was entitled to an instruction on the lesser included offense of murder, the state habeas court relied upon the Supreme Court's decisions in Beck v. Alabama, 100 S. Ct. 2382 (1980), and Hopper v. Evans, 102 S. Ct. 2049 (1982), which held that a capital jury must be instructed on a lesser included non-capital offense when the jury could rationally find that the capital defendant was guilty of only the lesser included non-capital offense. See Hopper, 102 S. Ct. at 2053 ("Beck held that due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction. But due process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction."). Applying these clearly established legal principles, the state habeas court held that the trial court did not err by refusing to give an instruction on the lesser included offense of murder because, as a factual matter, "there was no evidence in the record that if the applicant was guilty, he was guilty only of murder." The state habeas court cited compelling evidence that Robertson formed the intent to murder Brau before he shot her and found, again as a factual matter, that Robertson purposefully entered Mrs. Brau's separate portion of the residence, "encountered Mrs. Brau in

11

her den and killed her in order to facilitate his desire to take her car and any money she had." The state habeas court further noted that "there was no evidence presented at applicant's trial that even suggested any other reason for murdering Mrs. Brau other than to facilitate robbing her." Thus, Robertson's contention that the jury could have found that he formed the intent to rob Brau after he murdered her was supported only by Robertson's own speculation that such could be the case. The state habeas court concluded that Robertson was not entitled to a murder instruction because:

> [I]n order for the jury to have found that the applicant was guilty of only murder, they would have had to ignore all of the compelling evidence presented that established that applicant killed Mrs. Brau in order to facilitate his robbery of her and to create another possible motive based on no evidence, and this would not have been a rational finding.

Of particular relevance to Robertson's second issue, the state habeas court held that the instructions given in Robertson's case were adequate to satisfy the constitutional demands of Penry v. Lynaugh, 109 S. Ct. 2934 (1989), and related cases. The state habeas court correctly noted that Penry did not mandate that any particular vehicle be used to guide the jury's discretion to consider mitigating evidence in a capital case. Thus, Penry does not support Robertson's contention that he was entitled to submission of a third special issue specific to the issue of mitigating evidence. The state habeas court then relied upon a

12

host of post-Penry Texas cases holding that jury instructions like the ones given in Robertson's case provide a constitutionally adequate vehicle for guiding the jury's discretion as required by Penry. See Patrick v. State, 906 S.W.2d 481, 493-94 (Tex. Crim. App. 1995); Heiselbetz v. State, 906 S.W.2d 500, 503 (Tex. Crim. App. 1995); Riddle v. State, 888 S.W.2d 1, 7-8 (Tex. Crim. App. 1994); Garcia v. State, 887 S.W.2d 846, 860 (Tex. Crim. App. 1994); Fuller v. State, 829 S.W.2d 191 (Tex. Crim. App. 1992). The state habeas court concluded that the jury instructions given in Robertson's case provided a constitutionally adequate vehicle for guiding the jury's discretion to consider mitigating evidence.

In November 1998, the Texas Court of Criminal Appeals relied upon the trial court's findings and conclusions to deny relief.

**D. Federal Habeas Corpus**

In November 1998, Robertson filed the instant federal petition for relief pursuant to 28 U.S.C. § 2254. Robertson once again alleged constitutional error arising, inter alia, from: (1) the trial court's refusal to give the jury an instruction on the lesser included offense of murder, and (2) the trial court's submission of a "nullification" instruction and refusal to create a third special issue on the effect of mitigating evidence. Given the date of Robertson's filing, his claims are governed by AEDPA. See Lindh v. Murphy, 117 S. Ct. 2059, 2058 (1997).

In March 2000, a federal Magistrate Judge entered a

13

recommendation that Robertson's petition be denied and dismissed. With regard to Robertson's first issue, the Magistrate Judge summarily concluded that Robertson could not overcome the force of the state courts' factual determinations that the evidence did not support a murder instruction. See 28 U.S.C. § 2254(d)(2) & (e)(1). With regard to Robertson's second issue, the Magistrate Judge likewise concluded that Robertson could not demonstrate that the decisions of the state courts were contrary to or involved an unreasonable application of clearly established federal law, as decided by the United States Supreme Court. See 28 U.S.C. § 2254(d)(1).

In March 2000, the federal district court adopted the Magistrate Judge's recommendation and dismissed Robertson's § 2254 petition. Robertson filed a timely notice of appeal and a request for COA in the district court. The district court denied COA, and Robertson filed the instant motion with this Court.

## III. CONTROLLING STANDARDS

To obtain a COA, Robertson must make a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Barrientes v. Johnson, 221 F.3d 741, 771 (5th Cir. 2000). To meet this standard, Robertson must demonstrate "`that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed

14

further.'" Barrientes, 221 F.3d at 771 (quoting Slack v. McDaniel, 120 S. Ct. 1595, 1603-04 (2000)).

"[T]he determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." Id. Under that section, we are required to defer to a state habeas court's adjudication of a state prisoner's habeas claims on the merits unless the state habeas court's decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or (2) constituted an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," § 2254(d)(2).

The purpose and intent of § 2254(d) is to restrict the number of cases in which competent adjudications by our state courts are subjected to open-ended and unfettered review by the federal courts. For that reason, a state habeas court's decision will generally not be considered "contrary to" clearly established federal law unless: (1) the court's legal conclusion is in direct opposition to a prior conclusion of the United States Supreme Court on the same legal issue, or (2) the court reaches a different result than a prior decision of the United States Supreme Court on a set of materially indistinguishable facts. See Barrientes, 221 F.3d at 772. Similarly, a state habeas court's decision will not

15

be considered an "unreasonable application" of clearly established federal law unless, notwithstanding the fact that the state court has correctly identified the controlling legal principles, the state habeas court applies those principles to the petitioner's case in an unreasonable manner. Id.

AEDPA likewise obligates the federal habeas courts to afford the state habeas court's factual determinations substantial deference. Indeed, we must presume that the state habeas court's factual determinations are correct, unless rebutted with clear and convincing evidence. See 28 U.S.C. § 2254(e)(1).

Robertson has not, in this case, satisfied AEDPA's rigorous standard for establishing error in the legal conclusions or factual determinations made by the state habeas court when adjudicating his claims. With respect to Robertson's first issue, his argument that due process required that his jury be given an instruction on the lesser included offense of murder, the state habeas court's legal analysis was appropriately premised upon the Supreme Court's decision in Beck. Robertson does not identify any other Supreme Court authority capable of calling the state habeas court's reliance upon that case or its application of that case unreasonable. Rather, Robertson's essential point is that the jury could have acquitted on the capital murder charge and convicted on a murder instruction because the jury could have rationally found that he did not form the intent to rob Mrs. Brau until after the

16

offense was completed. We take his point to be primarily a challenge to the state habeas court's factual and record-based findings: (1) that there was ample record evidence to establish that Robertson formed the intent to rob Mrs. Brau before he killed her, and (2) that there was absolutely no record evidence to support Robertson's speculative contention that he *could* have formed the intent to rob Mrs. Brau after he shot her.

Having reviewed the record in light of Robertson's claim, we find no basis for finding that the state habeas court's factual determinations in this regard are either unreasonable or rebutted by clear and convincing evidence to the contrary. Robertson has not identified any actual record evidence, let alone clear and convincing evidence, that the factual conclusions of those courts were in error. Robertson's claims to the contrary are nothing more than supposition, which do not deserve encouragement and could not have served as the foundation of a rational jury finding. We therefore deny Robertson's motion for COA as to his argument that the trial court's refusal to give a murder instruction violated his constitutional rights.

With respect to Robertson's second issue, his argument that the jury instructions failed to provide an adequate vehicle for the consideration of constitutionally relevant mitigating evidence, Robertson's primary argument is that the state habeas court's decision was either contrary to or constituted an unreasonable

application of the Supreme Court's decision in <u>Penry v. Lynaugh</u>, 109 S. Ct. 2934 (1989).

We disagree. Robertson proceeded to trial in August 1990, and he was sentenced to death in February 1991. At that time, the Texas death penalty scheme, codified at Texas Code of Criminal Procedure article 37.071, required affirmative answers to two special issues: one on deliberateness and one on future dangerousness. The statute further required an instruction on provocation, if warranted by the evidence.

In 1989, the Supreme Court reviewed this same version of the Texas statute in <u>Penry</u>. <u>Penry</u> held that the statutory issues standing alone, without further instructions to the jury, did not provide Penry's jurors with an adequate vehicle for rational consideration of constitutionally relevant mitigating evidence of Penry's mental condition. <u>See</u> <u>Penry</u>, 109 S. Ct. at 2949-52. The Supreme Court remanded the case for resentencing, requiring that additional instructions be given on the issue of mitigating evidence. The Supreme Court did not, however, direct that any particular scheme be used to permit consideration of mitigating evidence. Moreover, the Supreme Court framed its discussion primarily in terms of additional instructions that might be given to the jury, rather than in terms of an additional special issue. <u>See</u> <u>id</u>. at 2952; <u>see also</u> <u>id</u>. at 2943-44, 2948, 2949, 2951. Thus, <u>Penry</u> left the issue of precisely what instructions were required to permit proper consideration of mitigating evidence to the

discretion of Texas trial judges.

When Robertson was tried, Texas courts were approaching the Penry issue on a case by case basis, with many employing instructions similar to those used in Robertson's case. See Goff v. State, 931 S.W.2d 537, 551 & n.3 (Tex. Crim. App. 1996); Lewis v. State, 911 S.W.2d 1, 6 & n.12 (Tex. Crim. App. 1995); Patrick v. State, 906 S.W.2d 481, 493-94 (Tex. Crim. App. 1995); Heiselbetz v. State, 906 S.W.2d 500, 503 (Tex. Crim. App. 1995); Riddle v. State, 888 S.W.2d 1, 7-8 (Tex. Crim. App. 1994); Garcia v. State, 887 S.W.2d 846, 860 (Tex. Crim. App. 1994); Fuller v. State, 829 S.W.2d 191 (Tex. Crim. App. 1992). Robertson has not identified any portion of Penry or any other then-applicable Supreme Court authority that would render the approach taken by the Texas courts in general or his state habeas court in particular contrary to or an unreasonable application of clearly established federal law. Moreover, this Court has already rejected the argument that the approach taken by the Texas courts constituted an unreasonable application of the Supreme Court's decision in Penry. See Penry v. Johnson, 215 F.3d 504, 508-09 (5th Cir. 2000), pet. for cert. filed, (U.S. Nov. 16, 2000) (No. 900-6677).[3] We, therefore, deny

_____

[3] Alternatively, Robertson argues that the instruction given in this case is per se unconstitutional because it is contrary to United State v. Sparf, 15 S. Ct. 273 (1895). We disagree. There is no doubt that an instruction permitting or encouraging the jury to avoid the controlling law would potentially raise serious or even insurmountable concerns. But the jury in this case "was not told to disregard the law; rather, it was instructed on how to obey the law, as explained by the Supreme Court in Penry I." Penry, 215

19

Robertson's motion for COA as to his argument that the trial court's jury instructions on the issue of mitigating evidence failed to provide an adequate vehicle for the jury's discretion in this capital case.

## CONCLUSION

For the foregoing reasons, Robertson's motion for a certificate of appealability is DENIED.

---

F.3d at 509.