**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

_____

No. 00-20863

_____

GERALD LEE MITCHELL,

Petitioner - Appellant,

versus

GARY L. JOHNSON, DIRECTOR, TEXAS DEPARTMENT OF
CRIMINAL JUSTICE, INSTITUTIONAL DIVISION,

Respondent - Appellee.

Appeal from the United States District Court
For the Southern District of Texas
USDC No. H-99-3072

March 12, 2001

Before EMILIO M. GARZA, STEWART, and PARKER, Circuit Judges.

PER CURIAM:[*]

Gerald Lee Mitchell ("Mitchell"), a Texas prisoner, was convicted of capital murder and

sentenced to death. Mitchell sought habeas corpus relief in the district court, which was denied, and

a Certificate of Appealability ("COA"), which was also denied. Pursuant to 28 U.S.C. § 2253,

[*]    Pursuant to 5ᵀᴴ Cɪʀ. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5ᵀᴴ Cɪʀ. R.
47.5.4.

Mitchell requests that we grant him a COA based on one or both of the following arguments: the district court erred when it (1) determined that 28 U.S.C. § 2254 "does not unconstitutionally limit the Article III jurisdiction of the federal courts"; (2) concluded, based on Fifth Circuit precedent, that he "was not entitled to a special issue on mitigation." We deny the COA.

Mitchell robbed, shot and killed Charles Angelo Marino, for which he was convicted of capital murder. We do not recite the details of the murder as they are unnecessary to our decision, and excerpt only those portions of the punishment phase proceedings that are pertinent to the COA application.

During the punishment phase, Dr. Priscilla Ray ("Dr. Ray"), a psychiatrist, testified on Mitchell's behalf that he had a history of drug abuse, and an I.Q. of 75. This I.Q., according to Dr. Ray, did not qualify Mitchell as mentally retarded, but did place him within the borderline range of intelligence. Dr. Ray noted that such persons are "led more easily and [do] not think through things quite [as] clearly [] as [] person[s] with normal intellectual functioning." Dr. Ray also testified that she had a "possible impression" that Mitchell suffered from temporal lobe seizures, but agreed that she could not conclude that Mitchell had ever suffered from a seizure. Finally, Dr. Ray stated that Mitchell's drug abuse was treatable, but that his borderline intellectual functioning, which could be "improve[d] a bit," would be with him forever.

At the end of the punishment phase, the court instructed the jury that they could consider all of the evidence provided in both phases of the trial in answering the following two special issues:

> Was the conduct of the defendant, Gerald Lee Mitchell, that caused the death of the deceased committed deliberately and with the reasonable expectation that the death of the deceased or another would result?

Is there a probability that the defendant, Gerald Lee Mitchell, would commit criminal acts of violence that would constitute a continuing threat to society?

The jury answered yes to each of the special issues, and the court sentenced Mitchell to death. The Texas Court of Criminal Appeals affirmed Mitchell's conviction and sentence, and the United States Supreme Court denied his application for a writ of certiorari. *See Mitchell v. State*, No. 69,631 (Tex. Crim App., Jan. 27, 1993); *Mitchell v. Texas*, 510 U.S. 885, 114 S.Ct. 235, 126 L.Ed.2d 189 (1993).

Subsequently, Mitchell sought habeas review. The state trial court held an evidentiary hearing, and determined that Mitchell was not entitled to a special issue on mitigation. The court reviewed Dr. Ray's testimony and found that there was "no evidence before the jury establishing that [Mitchell] had been diagnosed with temporal lobe seizure disorder." *Ex Parte Mitchell*, No. 426583-A, at 10 (338th Dist. Ct., Harris County, Tex. Feb. 18, 1998). In addition, the court found that the defendant's assertion that the jury was provided evidence of "'limited mental function, organic seizure disorder and extensive drug abuse . . . [which] produced a neurophysiological propensity in [Mitchell] to engage in erratic and harmful behaviors' misstate[d] the nature of the evidence before the jury."[1] *Id*. at 11. The court clarified that Dr. Ray's testimony was limited "to answering hypotheticals and that [the] factors listed in the hypothetical[s], such as organic seizure disorder . . . were not established as fact with respect to [Mitchell]." *Id*. Accordingly, the court found that Dr. Ray's testimony regarding the possibility that Mitchell suffered from a temporal lobe seizure was speculative. Although the court acknowledged that Mitchell had an I.Q. of 75, it found that "because the evidence of a defendant's intellectual capabilities and limitations can be fully considered within

---

[1] The habeas court interchangeably refers to the defendant's claims of temporal lobe seizures as temporal lobe seizures and organic seizure disorder.

the scope of the special issues and does not require a special instruction, . . . the applicant's contention that without a special instruction the jury could not adequately consider his 75 I.Q. must fail." *Id*. at 12.

The Texas Court of Criminal Appeals adopted the trial court's recommendation and denied Mitchell habeas relief. *See Ex Parte Mitchell*, No. 37-004-01 (Tex. Crim. App., Sept. 16, 1998). Thereafter, Mitchell applied for, and was denied, habeas relief in federal district court because he failed to demonstrate that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as required by § 2254(d). *See Mitchell v. Johnson*, No. H-99-3072 (S.D. Tex. Sept. 6, 2000).

We issue a COA when "the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Mitchell can satisfy this standard if he shows "that 'reasonable jurists could debate whether (or, for that matter agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.'" *Wheat v. Johnson*, 238 F.3d 357, 359-60 (5th Cir. 2000) (citations omitted). Furthermore, "[w]here a district court has rejected constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S.Ct. 1595, 1604, 146 L.Ed.2d 542 (2000). Finally, we have held that "the determination of whether a COA should issue must be made by viewing the petitioner's arguments through the lens of the deferential scheme laid out in 28 U.S.C. § 2254(d)." *Robertson v. Johnson*, 234 F.3d 890 (5th Cir. 2000) (citations omitted).

Mitchell's first argument in support of a COA is that § 2254(d) unconstitutionally limits the

Article III jurisdiction of the federal courts "by preventing [] federal courts from interpreting the Constitution and the laws of the United States" when state courts have not unreasonably applied federal law clearly established by the Supreme Court. According to Mitchell, Congress violated the doctrine of separation of powers by vesting Article III courts with habeas jurisdiction, and then removing their power to interpret and apply the Constitution and the laws of the United States to state habeas cases. In addition, he contends that district courts are "divested of [their] basic function under Article III" because they are prevented from finding the facts and applying the law to the facts.

The district court determined that the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed. 2d 389 (2000), and this Circuit's decisions in *Corwin v. Johnson*, 150 F.3d 467 (5th Cir. 1998), and *Hughes v. Johnson*, 191 F.3d 607, 612 (5th Cir. 1999) foreclosed this argument.

Mitchell contends that the district court's reliance on *Williams* was misplaced because the Court in *Williams* did not decide the constitutionality of § 2254(d). Mitchell also asserts that *Corwin* and *Hughes* are inapplicable because they rely on *Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996), *cert. denied*, 520 U.S. 1107, 117 S.Ct. 1114, 137 L.Ed.2d 315 (1997), which was a statutory construction case, and which Mitchell notes is of questionable authority due to the Supreme Court's analysis in *Williams*.

In *Williams*, the Supreme Court analyzed the review procedures employed by federal courts under § 2254(d)—specifically the meaning of the "contrary to" and "unreasonable application" clauses. In its analysis of the "unreasonable application" clause, the Court made clear that federal courts acting under AEDPA perform a limited review function, insofar as they may grant the writ only when the state court's decision is unreasonable. *See Williams*, 529 U.S. at 413, 120 S.Ct. at 1522.

Mitchell is correct, however, that the Supreme Court in *Williams* did not specifically rule on the constitutionality of § 2254(d). Even so, given the canon of construction "that federal statutes are to be construed so as to avoid serious doubts as to their constitutionality," we cannot say that the district court erred in relying on *Williams* as an implicit acknowledgment that § 2254(d) is constitutional. *Communications Workers of Am. v. Beck*, 487 U.S. 735, 762, 108 S.Ct. 2641, 2657, 101 L.Ed.2d 634 (1988).[2]

Furthermore, *Corwin* and *Hughes* bar our granting a COA on Mitchell's claim that § 2254(d) is unconstitutional. In *Corwin* we rejected the argument that the deferential review provisions of AEDPA should be ignored in favor of de novo review because AEDPA violated the Supremacy Clause. In doing so, we noted that we were bound by our decision in *Drinkard*. Thereafter, in *Hughes*, we clarified that *Corwin* governed our decision that AEDPA was not unconstitutional because it did not "violate the command of Article III . . . [by] delegat[ing] the 'final exercise' of the 'judicial power of the United States' to decide federal constitutional issues to state court[,] . . . [thereby] 'gut[ting] the Supremacy Clause.'"

Although in *Corwin* and *Hughes* we addressed whether § 2254(d) was unconstitutional because it violated the Supremacy Clause, in both cases we were asked to determine whether the federal judiciary's review powers were being unconstitutionally circumscribed and de novo review should be applied. Consequently, Mitchell's attempt to differentiate these cases based on *Corwin's* and *Hughes's* Supremacy Clause overlay is unconvincing. Moreover, while these cases cite

---

[2] The same logic applies to Mitchell's argument that *Hughes* and *Corwin* are not relevant because they rely on *Drinkard*, a statutory construction case.

*Drinkard*, the portions of *Corwin* and *Hughes* that are pertinent to Mitchell's argument do not turn on the analysis in *Drinkard* that the Supreme Court rejected in *Williams*. Accordingly, Mitchell has failed to make a substantial showing of the denial of a constitutional right based on the argument that the deferential standards of review in § 2254(d) are unconstitutional.[3]

Second, Mitchell argues that a COA should issue because the district court erroneously upheld the state court's decision not to afford him a special issue on mitigation.[4] Mitchell asserts that a special issue on mitigation was warranted under *Penry v. Lynaugh*, 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). Mitchell, however, is unable to demonstrate that the district court's assessment of the state habeas court's decision would be considered debatable or wrong by reasonable jurists, and, therefore, his argument fails. *See Slack*, 529 U.S. at 484, 120 S.Ct. at 1604.

In *Penry*, the Supreme Court was required to decide whether Penry's jury had been afforded the opportunity to consider, at sentencing, mitigating evidence concerning Penry's mental retardation and child abuse. Penry presented evidence that he had suffered from organic brain damage since childhood, that he had an I.Q. of 54 and a mental age of a 6 ½ year old, and that he was abused as a child. While the State's psychiatrists disagreed with some of Penry's evidence, "both psychiatrists for the State acknowledged that Penry was a person of extremely limited mental ability, [who] seemed

---

[3]     This analysis is consistent with our approach in *Tucker v. Johnson*, No. 99-11345, 2001 WL 138621 (Feb. 16, 2001), where we dealt with the narrower issue of whether the AEDPA standards, specifically *Drinkard*'s interpretation of the unreasonable application clause, violated Article III.

[4]     The district court erred, according to Mitchell, because it did not rely exclusively on Supreme Court precedent, namely *Penry*, to evaluate his claim, but also employed Fifth Circuit precedent. Our finding that Mitchell is not entitled to a COA based on the disparity of evidence between his case and Penry's obviates the need to decide whether the district court erred in applying Fifth Circuit precedent.

unable to learn from his mistakes." *Id*. at 310, 109 S.Ct. at 2942.

The Supreme Court found that Penry's jury was not provided with instructions regarding the consideration of evidence of Penry's mental deficiencies, and the three special issues that were presented did not apprise the jury that they were allowed to consider the evidence in mitigation. *Id*. at 320, 109 S.Ct. at 2947. As a result, the Supreme Court remanded Penry's case for resentencing because "a reasonable juror could well have believed that there was no vehicle for expressing the view that Penry did not deserve to be sentenced to death based upon his mitigating evidence." *Id*. at 326, 109 S.Ct. at 2951.

Like Penry, Mitchell asserts that the jury lacked the ability to consider his mitigating evidence, namely his 75 I.Q., the fact that he was "easily led and did not think through things as clearly as a person of normal intellect," and that he may have organic brain damage.[5] We disagree. The mitigating evidence present ed in Mitchell's case is considerably different than the evidence presented in Penry's case. Mitchell's I.Q. is approximately twenty points higher than Penry's. Mitchell presented no evidence that he actually suffered from organic brain damage; rather Mitchell's psychiatrist speculated that it was possible that Mitchell suffered from temporal lobe seizures. Further, in *Penry*, there was evidence that Penry was unable to "learn from his mistakes," whereas similar evidence was not presented in Mitchell's case. Accordingly, the district court's assessment that the state habeas court's decision was not contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court in *Penry*, was not debatable

---

[5]    In the district court Mitchell also argued that his youth, drug addiction, and potential for rehabilitation were grounds for a special issue on mitigation. Because the only ground he has offered this Court for a special issue on mitigation is his intellectual functioning, our review is accordingly limited. *See Dowthitt v. Johnson*, 230 F.3d 733,742 n.6 (5th Cir. 2000) (noting that issues not raised are abandoned).

or wrong. *See Cruz v. Johnson*, No. 00-50027, slip. op. at 5-6 (5th Cir. July 21, 2000) (evidentiary differences between COA applicant and Penry justified denial of COA); 5TH CIR. R. 47.5.4 (provides that unpublished opinions are not precedent but may be persuasive).

Because Mitchell has failed to make a substantial showing of the denial of a constitutional right with regard to either of his arguments in favor of a COA, his application for a COA is DENIED.