**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 01-41106

MICHAEL LYNN BLUE,

Petitioner - Appellee,

VERSUS

JANIE COCKRELL, Director,
Texas Department of Criminal Justice, Institutional Division,

Respondent - Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

July 16, 2002

Before DAVIS, EMILIO M. GARZA and STEWART, Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

The respondent appeals from the district court's grant of habeas corpus in favor of the defendant, Michael Lynn Blue. Finding no error, we affirm.

I.

Michael Lynn Blue was convicted in June 1989 in Texas state court of capital murder and sentenced to death for the murder and robbery of a cab driver. Blue confessed to hitting the decedent in the head with a claw hammer and taking his wallet. His accomplice stabbed the decedent in the neck and shot him twice in the head. The two then went to the decedent's house, where the accomplice broke in and retrieved a cash box.

On direct appeal, Blue claimed that punishment phase jury instructions prevented the jury

from acting upon mitigating evidence submitted in his behalf. The Texas Court of Criminal Appeals affirmed his conviction. That court assumed that Blue was entitled to a supplemental instruction under *Penry v. Lynaugh*, 492 U.S. 302 (1989)(*Penry I*), but held that the supplemental instruction included in the punishment charge was adequate to allow the jury to give full consideration and effect to Blue's mitigating evidence of mental retardation and physical and sexual abuse through the special issues. The same issue was raised in Blue's state habeas corpus petition. The trial court recommended denial on the same basis and the Texas Court of Criminal Appeals adopted the trial court's findings of fact and conclusions of law.

Blue then filed this federal habeas corpus petition in which he raised the same issue. On July 31, 2001, the district court granted relief on this claim following the then recently issued decision of the Supreme Court in *Penry v. Johnson*, 532 U.S. 782 (2001)(*Penry II*). The district court found that the jury instruction in Blue's case "suffer[ed] from the same flaws as those which rendered the instructions in Penry's case inadequate" and the jury was precluded from giving effect to Blue's mitigating evidence of mental retardation and childhood abuse. It ordered the respondent to release Blue from custody unless within 120 days the State of Texas either (1) conducts a new constitutionally permissible sentencing proceeding or (2) vacates Blue's death sentence and imposes the automatic life sentence specified by Texas law for a defendant who is convicted of capital murder but not sentenced to death. The state appeals.

The following relevant mitigating evidence was presented at the punishment phase of the trial. Blue was in special education classes while in school, which means that he was at least two years behind his peers in his ability to perform. Blue submitted results of numerous tests with IQ range of 64 (plus or minus 4 points) to 90. The test scores categorized him as mild to borderline mentally

2

retarded.  Blue was in the special education program at school, dropped out at age 16 and reads at a third to fifth grade level.  Prison records from a prior incarceration were admitted which established that Blue had been diagnosed with paranoid type schizophrenia.  An EEG examination was abnormal with minimal brain injury and right temporal spike wave focus. Blue was abandoned by his parents, raised in poverty by other relatives, and was physically and sexually abused as a child.   The sexual abuse began when Blue was seven and continued until he was fifteen or sixteen.  Blue had significant behavioral problems while in school and the state's expert opined that Blue had antisocial personality disorder, most likely resulting from his poor and abusive upbringing.  The state's expert also opined that a person with Blue's combination of mental and personality defects was likely to continue to be in trouble with authorities.  He said, a person who is "mildly mentally retarded" with a "schizophrenic antisocial personality disorder doesn't have a prayer."  A person like Blue is "constantly going to be in trouble."   Blue was first imprisoned at age eighteen for theft.  Except for approximately four months, Blue has been incarcerated in Texas prisons since 1979.

## II.

In *Penry I*, the Supreme Court held that the petitioner "had been sentenced to death in violation of the Eighth Amendment because his jury had not been adequately instructed with respect to mitigation evidence." *Penry I*, 121 S.Ct. at 1915.  In *Penry II*, the Supreme Court held that the trial court's jury instructions on mitigating circumstances given in response to *Penry I* failed to provide the jury with a vehicle to give effect to mitigating circumstances of mental retardation and childhood abuse, as required by the Eighth and Fourteenth Amendments.  The jury instructions in this case are substantially the same as those given in *Penry II*.  Blue's jury was asked:

(1) Was the conduct of the defendant, MICHAEL LYNN BLUE, also known as,

3

MICHAEL LYNN ROLLINS, that caused the death of the deceased, Sam Battell, committed deliberately and with the reasonable expectation that the death of the deceased or another would result?

(2) Is there a reasonable probability that the defendant, MICHAEL LYNN BLUE, also known as, MICHAEL LYNN ROLLINS, would commit criminal acts of violence that would constitute a continuing threat to society?

In answering the Special Issues you shall consider: (1) all evidence offered by either party at the guilt / innocence phase of the trial regarding the defendant's individual participation in the commission of the Capital Murder; and (2) all evidence offered by either party at the punishment phase of the trial, whether it be aggravating or mitigating evidence. If the mitigating evidence persuades you that the defendant should not be sentenced to death, then you shall answer one or both of the Special Issues "No."

The state argues that Blue's evidence of low I.Q. and childhood abuse did not warrant a *Penry II* type additional supplemental instruction, as the evidence did not rise to the level of constitutionally relevant mitigating evidence, nor was it beyond the reach of the jurors in determining answers to the special issues. Citing *Madden v. Collins*, 18 F.3d 304, 308 (5th Cir. 1994)(*citing Johnson v. Texas*, 509 U.S. 350, 365-67 (1993)). Specifically, the government relies on this court's recent decision in *Tennard v. Cockrell*, 284 F.3d 592 (5th Cir. 2002). In analyzing Tennard's *Penry* claims, the court set forth the following rules of analysis:

In reviewing a *Penry* claim, we must determine whether the mitigating evidence introduced at trial was constitutionally relevant and beyond the effective reach of the jury. *Davis v. Scott*, 51 F.3d 457, 460 (5th Cir. 1995). To be constitutionally relevant, "the evidence must show (1) a uniquely severe permanent handicap with which the defendant was burdened through no fault of his own, . . . and (2) that the criminal act was attributable to this severe permanent condition." *Id.* at 460-61 (internal quotation marks and citation omitted.)

*Tennard*, 284 F.3d at 595. The second requirement is alternatively stated as "A petitioner must show there is a nexus between the severe permanent condition (here, alleged mental retardation) and the capital murder." *Id.* at 597. The court in *Tennard* concluded that Tennard was precluded from

4

establishing a *Penry* claim because he failed to introduce at trial any evidence that the capital murder was in any way attributable to his I.Q. of 67.

The facts of this case are different from those in *Tennard.* The record evidence raised an inference sufficient to satisfy *Tennard's* requirements of handicap and nexus to the crime. In *Tennard*, the state court found no evidence in the record of Tennard's mental retardation. The *Tennard* panel was, of course required to give deference to that finding. There is no similar state court finding in this case. In *Tennard*, low I.Q. was the only *Penry* type mitigating evidence offered. Counsel did not argue Tennard's low IQ in mitigation. No evidence was introduced to explain his low I.Q. score or how it affected Tennard's culpability.[1]

In this case, in addition to evidence of Blue's low I.Q. / mental retardation, Blue presented evidence of paranoid schizophrenia, a deprived childhood, and physical and sexual childhood abuse. Also, the jury was entitled to find a nexus between Blue's criminal conduct and his retardation and other mental and personality disorders from the testimony of the state's expert. That witness gave an opinion that the combination of Blue's low I.Q./ mental retardation, paranoid schizophrenia and antisocial personality disorder made it almost inevitable that he would be in conflict with the law. We are, therefore, satisfied that Blue's mitigating evidence was constitutionally relevant.

Also, we see no basis on which to distinguish the nature and character of Blue's mitigating evidence from that presented in *Penry*. Penry was more severely mentally retarded with an I.Q. between 50 and 63 and the mental function of a 6 ½ year old. However, a similar ultimate

---

[1] See also, *Robertson v. Cockrell*, 279 F.3d 1062 (5th Cir. 2002), where the panel granted relief, presumably because the mitigation instruction suffered the same deficiencies as the *Penry II* instructions. We are unable to determine from the report of that case or its predecessor, *Robertson v. Johnson*, 234 F.3d 890 (5th Cir. 2000), precisely what type of mitigating evidence was produced or whether any consideration was given to the test set forth in *Tennard*.

conclusion was reached by psychiatric witnesses regarding Blue and Penry. Regarding Penry, a psychiatrist opined that Penry was unable "to appreciate the wrongfulness of his conduct or to conform his conduct to the law." *Penry I*, 109 S.Ct. at 2941. This is not significantly different from the conclusion reached by the state's expert about the inevitability of Blue's conflict with the law as described above.

The government points to evidence that Blue's mental retardation was not so severe as to make him uneducable. It also presented evidence that Blue may have fabricated his mental condition and traded the medication given to him in treatment for his schizophrenia to other inmates. This evidence goes to the credibility of Blue's mitigation evidence, which should be judged by the jury in answering effective supplemental instructions addressing the mitigation evidence.

III.

In summary, Blue produced substantial "double-edged" *Penry* type evidence from which a jury could conclude that he suffered from mental retardation and other emotional problems and had been subjected to severe physical and mental child abuse. The jury was also entitled to conclude from the opinion testimony of the state's expert that Blue's emotional and personality disorders made it very difficult for him to avoid criminal behavior and conflicts with authority and reduced his culpability for his crimes. We agree with the district court that the mitigation instruction given by the trial court in this case is substantially identical to the *Penry II* instruction and suffers from the same infirmities.

For the foregoing reasons, we AFFIRM the judgment of the district court. Accordingly, we remand this case to the district court with instructions to issue the writ and order the state to release Blue from custody unless, within a reasonable time to be established by the district court, the State

of Texas either (1) conducts a new constitutionally permissible sentencing proceeding or (2) vacates

Blue's death sentence and imposes the automatic life sentence specified by Texas law for a defendant

who is convicted of capital murder but not sentenced to death.[2]

AFFIRMED.   REMANDED.

CONCUR: STEWART, Circuit Judge, concurs in the judgment only.

---

[2]In making the decision whether to conduct a new sentencing proceeding, the state should also take into consideration the Supreme Court's recent decision in *Atkins v. Virginia*, ___ U.S. ___ (2002).