**Modified and Affirmed and Opinion Filed May 3, 2023**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-22-00360-CR

## ARMANDO RICARDO NAVARRO, Appellant
## V.
## THE STATE OF TEXAS, Appellee

**On Appeal from the 292nd Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F19-45714-V**

## MEMORANDUM OPINION

Before Justices Reichek, Nowell, and Garcia
Opinion by Justice Nowell

A jury found appellant Armando Ricardo Navarro guilty of capital murder, and the trial court sentenced him to life imprisonment. On appeal, appellant challenges the sufficiency of the evidence to support his conviction and requests modification of several errors in the judgment. The State raises a cross-point also seeking modification of an error in the judgment. As modified, we affirm the trial court's judgment.

## Background

Arturo Negrete worked for a company responsible for setting up displays in grocery stores. On the morning of August 6, 2019, Negrete drove his black Nissan Altima to a Kroger in Richardson, Texas to set up wine displays.

Around 9 a.m., Juan Hernandez went to the same Kroger during his work break. As he approached the main door, a man in construction gear, later identified as appellant, asked him for a cigarette. Hernandez said he did not smoke and kept walking. Appellant continued towards him and repeated his request for a cigarette. Hernandez again said no and walked away. Hernandez then heard a "strong yell" and felt a punch from behind on the right side of his neck. Hernandez realized appellant stabbed him.

Although no one witnessed what happened next, the police investigation determined appellant approached Negrete in the Kroger parking lot and stabbed him multiple times in his head, chest, stomach, and legs. One stab wound transected the popliteal artery, a large artery that runs behind the knee. It resulted in a huge loss of blood. The medical examiner determined Negrete died by homicide caused by hemorrhagic shock from multiple sharp force injuries.

Officer Stephanie Trice, a criminalist with the Richardson Police Department, responded to the Kroger crime scene. She discovered a large blood stain, approximately twelve feet by two feet, near a parking space. An orange safety vest

–2–

and a torn piece of black cloth, both with a large amount of blood, were in the parking space. She noted approximately twenty bloody footprints walking through the parking lot that led to another area of large blood. There was also a trail of blood that led to a tree in the parking lot where she found a black shirt. She believed the attack began in the middle of the parking lot based on the blood and shoe print evidence.

Detective Sarah Yee acted as lead detective. She spoke to numerous people, but no one saw appellant stab Hernandez or Negrete. Surveillance videos from the Kroger and nearby businesses did not capture the events. Without any concrete leads, officers decided to approach a nearby construction crew because investigators found a construction vest and hard hat left at the scene. The officers learned a member of the construction crew was missing and began searching for the missing man as a potential suspect.

Around 9:30 a.m., Christopher Boykins was riding in the passenger side of his company's delivery truck when he felt a "big boom" at the back of the truck. He realized someone hit him. When he looked back, he saw appellant reverse a black Altima, pull around the truck, and drive away. Boykins decided to follow the car because he considered the collision a hit and run. When appellant drove passed, Boykins noticed he was "kind of bloody looking." Appellant hit several other cars as he tried to get away.

Appellant eventually got out of the car, ran into a neighborhood, and tried to find an open house. Boykins next saw appellant leaving a home with a knife and called the police. When appellant saw the police, he dropped the knife along with a shirt. After appellant was arrested, Boykins showed officers where appellant dropped the knife and shirt. DNA testing confirmed the knife was the murder weapon.

Investigators confirmed the black Altima belonged to Negrete. Although they did not know for sure where the car was parked during the attack, given the location of the large blood stain and Negrete's blood on the car in a "spray fashion," investigators believed Negrete was standing near the car, which meant the car was parked near the large blood stain. The medical examiner's testimony supported the investigators' theory of events because Negrete's transected popliteal artery would not have caused immediate unconsciousness. Instead, he likely staggered for a short period of time with the arterial bleeding causing a large amount of spray.

The medical examiner found Negrete's car key in his possession during the autopsy. Detective Yee explained the Altima had a push button start so if it was running, it would continue to run even if the key was not in it. This indicated appellant took the car while it was running. Detective Yee considered it significant because "the fact that it's running and then it was taken, . . . that indicates that, to me, that that's what [appellant] was after." In her experience, a person trying to carjack someone usually injured the person to steal the car and leave the crime scene.

–4–

She believed appellant committed the first crime when he stabbed Hernandez and then tried to get away by stabbing Negrete and stealing the Altima. She described his shedding of clothes, crashing into numerous cars, running through a neighborhood, and dropping evidence "all one continuous spree." Although the State could have indicted appellant for murder, Detective Yee believed capital murder was appropriate because appellant murdered Negrete in the course of committing a robbery.

Defense counsel tried to discredit Detective Yee's carjacking theory because appellant's shirt with Negrete's blood on it, along with other blood droplets, were found farther out in the parking lot away from the parking spot where Negrete likely bled out. A witness also saw appellant wearing a black shirt near the trees.[1] Defense counsel urged this evidence indicated appellant killed Negrete and walked away from the car; therefore, appellant did not murder Negrete in the course of committing a robbery. Rather, appellant walked back some time later and took the car.

Detective Yee explained it was possible appellant walked towards the tree area leaving blood from his attack on Hernandez and then decided it was better to steal a car than continue walking. He then saw Negrete, decided to attack him, and

---

[1] This witness, who allegedly saw appellant take off the shirt, did not testify at trial. The record contains no further information about the witness other than the brief references made by defense counsel during his cross-examination of Detective Yee.

steal his car. She acknowledged Negrete's blood was on the black shirt, but it was possible appellant threw it out the window as he drove away.

The jury believed the State's theory of events and found appellant guilty of capital murder as charged in the indictment. This appeal followed.

## Sufficiency of the Evidence

The State indicted appellant for the offense of capital murder by intentionally causing Negrete's death by stabbing him with a knife while in the course of committing and attempting to commit robbery. Appellant challenges the sufficiency of the evidence to support his capital murder conviction because the State's carjacking theory was based on pure speculation, and the physical evidence supported the defensive theory that Negrete's murder and theft of his Altima were unrelated events. The State responds the evidence proved appellant stabbed Negrete to death and then used his car to flee the scene; therefore, a rational jury could infer from the evidence appellant intended to rob Negrete when he killed him.

Appellant does not dispute he murdered and robbed Negrete. He concedes he did both; however, he argues his intent to rob Negrete formed after the murder. Accordingly, our analysis focuses on whether the evidence is legally sufficient to establish appellant intended to rob Negrete when he murdered him.

We review an appellant's challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We examine all the evidence

in the light most favorable to the jury's verdict to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 318–19; *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). Our review includes all of the evidence introduced, whether it was admissible or inadmissible. *See Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013).

The jury is the sole judge of witness credibility and the weight to be given their testimony. *Merritt*, 368 S.W.3d at 525 (citing *Jackson*, 443 U.S. at 319). As the sole factfinder, the jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. *Canfield v. State*, 429 S.W.3d 54, 65 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). We afford almost complete deference to the jury's determinations of credibility. *Id.* In the event of conflicting evidence, we presume the jury resolved conflicts in favor of the verdict and defer to that determination. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence, alone, can be sufficient. *See Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016).

A person commits the offense of capital murder, as charged in the instant case, if he intentionally commits murder in the course of committing or attempting to commit robbery. *See* TEX. PENAL CODE ANN. § 19.03(a)(2). A person commits

–7–

robbery if, in the course of committing theft and with the intent to obtain or maintain control of the property, he "intentionally, knowingly, or recklessly causes bodily injury to another." *Id*. § 29.02(a). As used in section 19.03(a)(2), "in the course of committing" the offense means "conduct occurring in an attempt to commit, during the commission, or in the immediate flight after the attempt or commission of the offense." *Dawkins v. State*, 495 S.W.3d 890, 895 (Tex. App.—Houston [14th Dist.] 2016, no pet.) (quoting *Robertson v. State*, 871 S.W.2d 701, 705 (Tex. Crim. App. 1993)).

The defendant's requisite intent to commit the offense may be inferred from his actions or conduct. *Robertson*, 871 S.W.2d at 705. For a murder to qualify as capital murder in this context, the intent to rob must be formed prior to or concurrent with the murder. *Id*. Proof that the robbery was committed as an afterthought and unrelated to the murder is not sufficient. *Herrin v. State*, 125 S.W.3d 436, 441 (Tex. Crim. App. 2002). But, a robbery occurring immediately after a murder will support an inference that the murder was intended to facilitate the robbery. *Padilla v. State*, 326 S.W.3d 195, 200 (Tex. Crim. App. 2010); *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989) (en banc) ("We have held numerous times that this aggravating element [murder in the course of committing robbery] is sufficiently proven if the State proves the robbery occurred immediately after the commission of the murder.").

Here, the jury could reasonably infer appellant murdered Negrete in the course of stealing his car and disbelieve evidence to the contrary. *Canfield*, 429 S.W.3d at 65. Officer Trice testified the location of the large blood stain in the parking lot was consistent with someone standing by a car and getting stabbed. Detective Yee explained blood spray was visible outside the vehicle, on the inside and outside of the doors, and on the center console, further indicating the attack happened near the car.

Although no one knows if Negrete was inside or outside the car when the murder occurred, it is clear Negrete somehow exited the car without time to turn off the engine. Because Negrete's key was found in his pocket, not in the car, appellant could only have taken the car while it was still running. A jury may infer from a theft committed immediately after a murder that the murder was intended to facilitate a robbery. *See, e.g.*, *Russo*, 228 S.W.3d at 793 (citing *Cooper v. State*, 67 S.W.3d 221, 224 (Tex. Crim. App. 2002)). Thus, it was reasonable for the jury to infer that by taking the car while it was still running, appellant murdered Negrete for the purpose of stealing it. *Id.*

The jury's conclusion was further supported by appellant stabbing Hernandez prior to attacking Negrete. Although the State was not required to prove motive, such evidence was admissible as a circumstance tending to prove guilt. *Id.* Detective Yee believed that after appellant stabbed Hernandez, he needed to flee the

scene. Appellant's attack on Hernandez, Negrete's murder, and the car robbery were "one continuous spree."

To the extent the physical evidence indicated appellant briefly walked away from the car to dispose of his bloody shirt before stealing Negrete's car, we presume the jury resolved such conflicts in favor of the verdict. *Isassi*, 330 S.W.3d at 638. The jury was free to ignore the brief reference to a witness who claimed to have seen appellant wearing the shirt near the trees in the parking lot and instead believe Detective Yee's scenario in which appellant could have thrown the shirt out the window as he drove away. Moreover, appellant's actions in trying to dispose of the bloody shirt to hide evidence of his crime reinforces the jury's conclusion he murdered Negrete to steal his car, flee the scene, and avoid prosecution. *See Clayton v. State*, 235 S.W.3d 772, 789 (Tex. Crim. App. 2007) (recognizing factfinder may draw an inference of guilt from an accused fleeing the scene); *see also Greenwood v. State*, No. 04-21-00313-CR, 2023 WL 2396799, at *5 n.8 (Tex. App.—San Antonio Mar. 8, 2023, no pet.) (mem. op., not designated for publication) (noting jury could reasonably infer guilt based on evidence of flight and disposing of murder weapon).

After considering the evidence in the light most favorable to the verdict, we conclude a rational jury could have found beyond a reasonable doubt all the essential elements of capital murder, including the timely formed intent of the aggravating element of robbery. We overrule appellant's first issue.

## Modification of the Judgment

In his second and third issues, appellant requests modification of the judgment to reflect he pleaded not guilty to the offense and to change the deadly weapon finding from a firearm to a knife. The State agrees with the requested modifications and further asks we modify the judgment to reflect that appellant was convicted of "capital murder in the course of a robbery," not "capital murder by terroristic threat."

We have the power to modify a judgment to speak the truth when we have the necessary information to do so. TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993) (en banc); *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1991, pet. ref'd) (en banc). The record supports the requested modifications; therefore, we agree with appellant and the State that the judgment should be corrected. *See Blais v. State*, No. 05-20-00556-CR, 2021 WL 2010269, at *2 (Tex. App.—Dallas May 20, 2021, no pet.) (mem. op., not designated for publication). Accordingly, we sustain appellant's first issue and modify the judgment to reflect he pleaded not guilty to the charged offense. *See, e.g.*, *Zamarron v. State*, No. 05-19-00632-CR, 2020 WL 6280869, at *4 (Tex. App.—Dallas Oct. 27, 2020, pet. ref'd) (mem. op., not designated for publication) (modifying judgment to reflect not guilty plea). We likewise sustain appellant's second issue and modify the judgment to indicate the deadly weapon used was a knife, not a firearm. *See, e.g.*, *Davidson v. State*, No. 05-20-00181-CR, 2021 WL 1438305, at *2 (Tex. App.—Dallas Apr. 16, 2021, no pet.) (mem. op., not designed for publication) (modifying

–11–

judgment to reflect correct deadly weapon used in offense).  Finally, we sustain the State's cross-point and modify the judgment to reflect that appellant was convicted of "capital murder in the course of a robbery," and not "capital murder by terroristic threat."  *See, e.g.*, *Williams v. State*, No. 05-20-00939-CR, 2022 WL 354587, at \*2 (Tex. App.—Dallas Feb. 7, 2022, no pet., not designated for publication) (mem. op.) (modifying judgment to reflect correct offense).

## Conclusion

As modified, we affirm the trial court's judgment.

|  | /Erin A. Nowell// |
| --- | --- |
|  | ERIN A. NOWELL |
| 220360f.u05 | JUSTICE |

Do Not Publish
TEX. R. APP. P. 47.2(b)



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ARMANDO RICARDO
NAVARRO, Appellant

No. 05-22-00360-CR        V.

THE STATE OF TEXAS, Appellee

On Appeal from the 292nd Judicial
District Court, Dallas County, Texas
Trial Court Cause No. F19-45714-V.
Opinion delivered by Justice Nowell.
Justices Reichek and Garcia
participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:

Under "Offense for which Defendant Convicted:," we **REMOVE** "CAPITAL MURDER BY TERRORISTIC THREAT" and **REPLACE** with "CAPITAL MURDER IN THE COURSE OF COMMITTING ROBBERY."

Under "Plea to the Offense:," we **REMOVE** "GUILTY" and **REPLACE** with "NOT GUILTY."

Under "Findings on Deadly Weapon:," we **REMOVE** "YES, A FIREARM" and **REPLACE** with "YES, A KNIFE." We further **REMOVE** "FIREARM" under the "special findings and orders" and **REPLACE** with "KNIFE."

As **REFORMED**, the judgment is **AFFIRMED**.

Judgment entered this 3rd day of May, 2023.